498 So.2d 1037 (1986)
Thomas P. ROBERTS, Appellant,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY and J. Glover Wilkins, Jr., Appellees.
No. BL-148.
District Court of Appeal of Florida, First District.
December 16, 1986.
Louis K. Rosenbloum, of Levin, Warfield, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, for appellant.
John P. Townsend, of Chesser, Wingard, Barr & Townsend, Fort Walton Beach, for appellees.
JOANOS, Judge.
Appellant Thomas P. Roberts (Roberts) appeals from a directed verdict in which the trial court ruled that appellees J. Glover Wilkins, Jr. (Wilkins) and his insurer United States Fidelity & Guaranty Company (USF & G) were not liable for injuries caused to Roberts by Wilkins's vehicle. Roberts presents two questions for our review: (1) whether Wilkins and USF & G are liable under the dangerous instrumentality doctrine, and (2) whether the USF & G policy exclusions are applicable in the circumstances of this case. We affirm.
This is a somewhat atypical auto injury case. On May 31, 1983, Roberts was injured when the vehicle in which he was riding as a passenger was struck by Wilkins's 1972 Blazer. The Blazer was being driven by Miller, a repairman, when the collision occurred. In fact, Wilkins did not learn that his vehicle had been involved in an accident until several days later.
On the afternoon of Tuesday, May 31, 1983, Wilkins telephoned Miller, the owner and operator of a small service station at Santa Rosa Beach. Wilkins hoped to have his Blazer serviced that afternoon.[1] When Miller advised that he was unable to service the vehicle that day, Wilkins asked if he might leave it at the station so that Miller could work on it early the next morning. *1038 Wilkins advised that the Blazer needed routine servicing, with particular attention to the mechanism which shifted the vehicle from 2-wheel to 4-wheel drive. Wilkins left his Blazer with Miller with the understanding that Miller would drive the vehicle for the limited purpose of situating it under the shed at the station or at Miller's house, adjacent to the station.
As it turned out, Miller was able to work on the Blazer that same afternoon. Then, after closing the station for the day, Miller drove the Blazer to the beach to join friends for a picnic. It was nearly dark when Miller left the beach area to return home, and he had no plans to do any further work on the vehicle that day. The collision occurred as Miller was homeward bound.
Roberts filed suit against Wilkins and his insurer USF & G for bodily injuries which he suffered in the accident involving Wilkins's Blazer. Before trial, the trial court denied Wilkins's and USF & G's motion for summary judgment on the issues of Wilkins's responsibility for Miller's negligence and USF & G's responsibility to provide coverage for Miller. Then, at the close of plaintiff Roberts's case, the trial court directed a verdict in favor of Wilkins and USF & G, ruling that the case fits within the "shop rule" exception. We agree.
Under Florida's dangerous instrumentality doctrine, "the owner of a vehicle is liable to third persons for its negligent operation by anyone to whom it has been entrusted, even if the bailee grossly violates the owner's express instructions concerning its use." Avis Rent-A-Car Systems, Inc. v. Garmas, 440 So.2d 1311; 1313 (Fla. 3rd DCA 1983), pet. for rev. denied, 451 So.2d 848 (Fla. 1984), citing Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920) and Susco Car Rental System of Florida v. Leonard, 112 So.2d 832 (Fla. 1959).
In Castillo v. Bickley, 363 So.2d 792 (Fla. 1978), the supreme court created an exception to the dangerous instrumentality doctrine in service station and repairman situations. In so doing, the court did not turn away from the public policy consideration inherent in the dangerous instrumentality doctrine. Instead, the court found that persons injured by acts of garage and service repair agencies have recourse to those agencies for their losses. Therefore, the court held 
the owner of a motor vehicle is not liable for injuries caused by the negligence of the repairman or serviceman with whom the vehicle has been left, so long as the owner does not exercise control over the injury  causing operation of the vehicle during the servicing, service-related testing, or transport of the vehicle, and is not otherwise negligent. 363 So.2d at 793. (emphasis supplied).
Then, in Jack Lee Buick, Inc. v. Bolton, 377 So.2d 226, 228 (Fla. 1st DCA 1979), cert. denied, 386 So.2d 638 (Fla. 1980), this court observed the supreme court had receded from the broad owner liability imposed by the dangerous instrumentality doctrine to a very limited extent; "that is, in the case of accidents while the vehicle is under the control and direction of repair and service agencies during their work related operations."
We conclude that the shop rule exception, which relieves an owner of liability if the accident occurs during an act incidental to the car's repair, is applicable to this case. Miller clearly acted beyond the scope of Wilkins's implied permission when he drove the Blazer to the beach. Although the record contains conflicting evidence concerning whether Miller was or was not road testing the vehicle when the accident occurred, it is clear that the Blazer's need for repair was the circumstance which occasioned its operation by Miller. Therefore, we find the shop rule exception relieves Wilkins and his insurer of liability for Miller's negligent operation of the vehicle.
The second point raised by Roberts concerns the USF & G policy exclusions. USF & G denied coverage to Miller on the basis of its business use exclusion and its permissive use exclusion. The business use exclusion provides in relevant part:

*1039 A. We do not provide Liability Coverage for any person:
.....
6. While employed or otherwise engaged in the business or occupation of:
a. selling;
b. repairing;
c. servicing;
d. storing; or
e. parking;
vehicles designed for use mainly on public highways. This includes road testing and delivery.
It is undisputed that Miller was engaged in the business of repairing and servicing vehicles designed for use on the public highways. Nevertheless, Roberts relies on Cotton States Mutual Insurance Co. v. Jacob, 379 So.2d 129 (Fla. 3rd DCA 1980), to support his contention that the automobile business exclusion does not apply in this case. Cotton States is distinguishable from the instant case, however, for in Cotton States the driver of the vehicle was not engaged in the business of repairing or servicing, nor was he engaged in road testing or other duties connected with repairing or servicing. Instead, he was driving the vehicle at the invitation of a friend who owned and operated an auto paint and body repair shop.
Unlike the situation in Cotton States, in this case the driver was the owner and operator of an auto servicing business. Since Miller was on a personal errand when the accident occurred, Roberts urges the business exclusion ought not apply. In light of the plain language of the exclusion, this argument is not persuasive, for clearly Miller was engaged in the business of repairing and servicing, and would not have had the vehicle available to drive were it not for his business.
The permissive use exclusion provides in relevant part:
A. We do not provide Liability Coverage for any person:
.....
8. Using a vehicle without a reasonable belief that that person is entitled to do so.
The trial court ruled that Miller did not have a "reasonable belief" that he was entitled to drive Wilkins's vehicle to the beach. Although Miller testified that he had known Wilkins and his family for a number of years and that he did not think Wilkins would mind if he drove the Blazer, we agree with the trial court in this regard.
Since we have determined that a directed verdict was properly entered as to both issues raised in this appeal, we affirm the final judgment from which this appeal was taken.
THOMPSON and NIMMONS, JJ., concur.
NOTES
[1] The record indicates that Miller serviced the Blazer for Wilkins on a regular basis, and that other members of Wilkins's family were also regular customers of Miller's station.