541 A.2d 1340

**GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORPORATION, LTD.**

v.

**Michael D. PERRY.**

**No. 1447, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

June 9, 1988.

---

504

A. Gwynn Bowie, Jr. (Smith, Somerville & Case, on the brief), Annapolis, for appellant.

Edward H. Nabb, Jr., Cambridge, for appellee.

Argued before MOYLAN, BISHOP and POLLITT, JJ.

BISHOP, Judge.

Michael D. Perry, appellee, filed suit in the Circuit Court for Dorchester County (Edmondson, J.) seeking a declaratory judgment that an accident in which he was involved was covered by an automobile liability insurance policy issued to his mother, Elizabeth S. Perry, by appellant, General Accident Fire & Life Assurance Corporation, Ltd. (General Accident).

On October 9, 1987, the trial court issued a declaratory judgment which requires General Accident to provide appellee with coverage. On appeal, General Accident raises one issue:

Whether the trial court erred in declaring that, under the policy, appellee had a reasonable belief that he was entitled to use the insured vehicle and that appellee was, therefore, entitled to coverage under the policy.

## FACTS

At all times relevant to the litigation, appellee did not possess a valid driver's license. Appellee testified that he was not able to obtain a driver's license because "when I was 16 years old, I was apprehended by the police for operating a vehicle without a driver's license." Nevertheless, at the age of nineteen, appellee purchased a pickup truck and since he was unable to title the truck in his name alone because he lacked a driver's license, he titled the truck in both his and his mother's names, as co-owners. Appellee also testified that he titled the truck in both names to obtain insurance. At all times relevant to the litigation, appellee lived at home with his parents.

Appellee's mother purchased insurance for the truck from General Accident. Appellee was not listed on the policy as a possible operator. Both appellee and his mother testified that appellee drove the truck on Maryland's public highways in Dorchester County and on the family's private property. Appellee had his parents' "permission" to drive the truck on the public highways, but only to go to work or to go to a local store.

Appellee testified that, on August 18, 1982, he took the truck, without his parents' permission, onto a public highway, and was involved in an accident injuring a passenger. Appellee's mother testified that had appellee asked for permission "to go where he went on the evening he had the accident" she would have denied him permission to use the truck. On cross-examination, appellee testified:

Q On the day in question you didn't have permission to use this pickup truck, did you?

A No.

Q And you didn't harbor any belief that you had a right to use it that day, did you?

A I didn't have no legal right, no.

Q You didn't believe you had a right to use it?

A I paid for the truck. I believe I had a right to use it.

Q On the day in question you didn't have reasonable belief, did you, that you could use this truck that day, because you didn't have a driver's license?

A No, I didn't have a driver's license.

Appellee also testified that he told one of General Accident's investigators, on the day of the accident, that "my mother's name was put on the bill of sale so I could purchase auto insurance on the vehicle." Appellee admitted lying to that investigator when he told the investigator that "the date of the accident . . . was the first time I ever drove the vehicle."

The following portions of General Accident's policy are pertinent to the issue:

PART A—LIABILITY COVERAGE

We will pay damages for bodily injury or property damage for which any *covered person* becomes legally responsible because of an auto accident.

. . . . .

"*Covered person*" as used in this part means:

1. You or any *family member* for the ownership, maintenance or use of any auto or trailer.

2. Any person using *your covered auto.*

. . . . .

EXCLUSIONS

A. We do not provide Liability Coverage for any person:

. . . . .

8. Using a vehicle without a reasonable belief that that person is entitled to do so. (Emphasis in original.)

In the policy "Family Member" is defined as "a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child."

Unless exclusion A.8. applies, General Accident concedes that appellee is covered under its policy. General Accident argues, however, that appellee was not legally entitled to drive on Maryland's public highways without a license, that

appellee knew he did not have a license and, therefore, appellee knew that he was not supposed to drive on the highways. Based on these facts, General Accident concludes that appellee is not covered under the policy.

In *Pacific Indemnity v. Interstate Fire & Casualty*, 302 Md. 383, 388–389, 488 A.2d 486 (1985), the Court of Appeals said:

Construction of insurance contracts in Maryland is governed by a few well-established principles. An insurance contract, like any other contract, is measured by its terms unless a statute, a regulation, or public policy is violated thereby. To determine the intention of the parties to the insurance contract, which is the point of the whole analysis, we construe the instrument as a whole. Maryland courts should examine the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution.

In so doing, we accord words their ordinary and accepted meanings. The test is what meaning a reasonably prudent lay person would attach to the term. This Court has consulted *Webster's Dictionary, Random House Dictionary*, or, less often, *Black's Law Dictionary*.

In the first instance the inquiry is confined to analysis of the language used. Courts may construe unambiguous contracts as a matter of law.

The language used may be ambiguous if it is "general" and may suggest two meanings to a reasonably prudent lay person. If the language of the contract is ambiguous, extrinsic evidence may be consulted to determine the intention of the parties and whether the ambiguous language has a trade usage. Construction of the contract by the parties to it before the controversy arises is an important aid to interpretation of uncertain terms.

If the extrinsic evidence presents disputed factual issues, construction of the ambiguous contract is for the jury. The court may construe an ambiguous contract if there is no factual dispute in the evidence. (Citations omitted.)

In *Truck Insurance Exchange v. Marks Rentals*, 288 Md. 428, 435, 418 A.2d 1187 (1980), the Court stated, "it is a sound principle of contract construction that where one party is responsible for the drafting of an instrument, absent evidence indicating the intention of the parties, any ambiguity will be resolved against that party." (Citations omitted.)

Although exclusion A.8. has been construed by courts in other states, our construction will be one of first impression in Maryland. In *Economy Fire & Casualty v. State Farm Mutual Insurance*, 153 Ill.App.3d 378, 106 Ill.Dec. 543, 546, 505 N.E.2d 1334, 1337 (1987), the Court said:

> Here, the insurance policy provides general coverage in one part and groups the exclusions, including the "reasonable belief" exclusion, in another part. This type of provision apparently replaces the traditional "omnibus" clause wherein the language of the policy provided for coverage where the use of the vehicle was with the permission or consent of the named insured. This may explain the paucity of cases in Illinois on this particular type of liability policy. (Citations omitted.)

Other courts have described the type of policy and exclusion at issue as an "easy reading" or so called "plain language" policy, of recent vintage. *Georgia Farm Bureau Mutual v. Fire & Casualty Insurance*, 180 Ga.App. 777, 350 S.E.2d 325, 326 (1986); *Allstate Insurance Company v. United States Fidelity and Guaranty Company*, 663 F.Supp. 548, 552 (W.D.Ark.1987).

Of the ten cases cited in the briefs, six upheld the validity of the insurer's exclusion [1] and four required the insurer to

---

1. *Robertson v. Lumbermen's Mutual Casualty Co.*, 160 Ga.App. 52, 286 S.E.2d 305 (1981), *overruled on other grounds*, 182 Ga.App. 273, 355 S.E.2d 767, 769 (1987); *Dairyland v. General Accident Insurance Co.*, 435 So.2d 1263 (Ala.1983); *Georgia Farm Bureau Mutual v. Fire & Casualty Insurance*, 180 Ga.App. 777, 350 S.E.2d 325 (1986); *Donegal Mutual Insurance Co. v. Eyler*, 360 Pa.Super. 89, 519 A.2d 1005 (1987); *Economy Fire & Casualty Co. v. State Farm Mutual Insurance Co.*, 153 Ill.App.3d 378, 106 Ill.Dec. 543, 505 N.E.2d 1334 (1987); *Allstate*

provide coverage based on the ambiguity found in the exclusion.[2] Our independent research has uncovered only four other cases which have addressed an issue related to this type of exclusion. Of those cases, two upheld the validity of the insurer's exclusion,[3] one reversed a lower court's judgment upholding the validity of the exclusion[4] and one did not decide the issue.[5]

In *Robertson v. Lumbermen's Mutual Casualty Co.*, 160 Ga.App. 52, 286 S.E.2d 305 (1981), *overruled on other grounds*, 182 Ga.App. 273, 355 S.E.2d 767, 769 (1987), a wife sued her husband for divorce. During the pendency of the divorce proceedings, the wife obtained an interlocutory order granting her exclusive possession and control over a car titled in the name of both her and her husband. The wife demanded the return of her husband's car keys, but he refused. Subsequent to the interlocutory order, but after the events which gave rise to the litigation, the wife titled the car in her name alone. Later, using his set of keys, the husband took the wife's car without her permission and was involved in an accident which resulted in injuries to others. The wife's insurance policy contained an exclusion of coverage "for any person using the vehicle who is without a reasonable belief that he is entitled to do so." *Id.*, 286 S.E.2d at 307.

---

*Insurance Company v. United States Fidelity and Guaranty Company,* 663 F.Supp. 548 (W.D.Ark.1987).

**2.** *State Automobile Mutual Insurance Co. v. Ellis,* 700 S.W.2d 801 (Ky.App.1985); *Economy Fire & Casualty Co. v. Kubik,* 142 Ill.App.3d 906, 97 Ill.Dec. 68, 492 N.E.2d 504 (1986); *Safeco Insurance Co. of America v. Davis,* 44 Wash.App. 161, 721 P.2d 550 (1986); *Canadian Indemnity Co. v. Heflin,* 151 Ariz. 257, 727 P.2d 35 (1986).

**3.** *Roberts v. United States Fidelity and Guaranty Company,* 498 So.2d 1037 (Fla.App.1986) and *Nationwide Mutual Insurance Co. v. Southern Trust Insurance Co.,* 174 Ga.App. 513, 330 S.E.2d 443 (1985).

**4.** *United Pacific Insurance Co. v. Larsen,* 44 Wash.App. 529, 723 P.2d 8 (1986).

**5.** *Francois v. Ybarzabel,* 469 So.2d 1001 (La.App.1985), *aff'd,* 483 So.2d 602 (La.1986).

The court refused to require the insurer to provide coverage, and held that the husband could not have had a reasonable belief that he was entitled to use the wife's car because he knew of the divorce court's order giving the wife exclusive control and possession of the car; he knew that the wife had denied him her permission to use the car; that prior to his taking the car just before the accident, the car had been locked and previously he had been told to surrender his keys. *Id.,* 286 S.E.2d at 308.

In *Dairyland v. General Accident Insurance Co.,* 435 So.2d 1263 (Ala.1983), the insured gave her daughter permission to drive her car. The daughter then gave permission to her fiance to drive the car. The fiance knew that the insured's permission to drive the car was limited to the daughter, that the insured did not want him to drive her car at any time and that the daughter did not have the authority to give him permission to drive the car. While driving the car, the fiance was involved in a personal injury accident. The insured's policy excluded any person "[u]sing a vehicle without a reasonable belief that that person is entitled to do so." *Id.* at 1264. The court found the exclusion applicable and agreed with the insurer in its denial of coverage. *Id.*

In *Georgia Farm Bureau, supra,* the insured's car, while being driven by a cousin without the insured's permission or knowledge, was involved in an accident causing injury to the occupants of another car. The cousin knew that he was not allowed to use the car and that if he had asked for permission, it would have been denied. The insured's policy excluded "Liability Coverage for any person ... using a vehicle without a reasonable belief that that person is entitled to do so." *Id.,* 350 S.E.2d at 326.

Again the court agreed with the insurer and refused to require coverage, despite an argument by the injured parties that the exclusion was ambiguous because under the terms of the policy, the cousin was a "[c]overed person" as a "family member" and as "any person using your covered auto." *Id.,* 350 S.E.2d at 325–326. The injured parties had

argued that the exclusion referred only to "any person", leaving out a reference to a "family member", and that the cousin should not be excluded because he is a "family member". In rejecting that argument, the court noted that "[c]overage of all types is set forth in one part [of the policy] and all the exclusions are grouped separately. The language 'any persons' refers to each of the nine exclusions listed, including the one in question. It is clear that 'any person' means just that, including the named insured." *Id.*, 350 S.E.2d at p. 326.[6] The court emphasized that the applicability of the exclusion was on "the state of mind of the user." *Id.*

In *Donegal Mutual Insurance Co. v. Eyler*, 360 Pa.Super. 89, 519 A.2d 1005 (1987), A. Eyler drove a car owned by his brother, J. Eyler, and insured by company X. A. Eyler was involved in an accident injuring another driver. A. Eyler lived at home with his mother who was insured by company Y. Both insurance companies denied coverage on the basis that A. Eyler was a person "[u]sing a vehicle without a reasonable belief that [he was] is entitled to do so." *Id.*, 519 A.2d at 1009.

At a deposition, J. Eyler testified that he told his brother only to "use the car to travel to and from work, that he was not to drive the car after midnight and that he was not to drive the car after drinking any alcohol." *Id.* A. Eyler confirmed that his brother put use restrictions on the car and that he did not obey them. The use was in violation of each of the restrictions.

The court held that neither insurance company was required to provide coverage. The court reasoned that A. Eyler "consistently stated that he did not believe that he

---

**6.** The court in *Georgia Farm Bureau* did not provide a full excerpt of the provisions of the insured's policy to which it referred. Nevertheless, the portions of the policy quoted in *Georgia Farm Bureau* are identical with those portions in the policy *sub judice.* We also note that the court's reference to nine exclusions in the *Georgia Farm Bureau'* policy is identical to the number of exclusions contained in the policy *sub judice.*

was entitled to operate the vehicle under the circumstances present at the time of the accident. The question of whether or not, if the operator had believed that he was entitled to operate the vehicle, that belief was reasonable, is irrelevant." *Id.*, 519 A.2d at 1010.

In *Economy Fire & Casualty Co. v. State Farm Mutual Insurance Co., supra,* the driver's license of Barton, the driver of the car, had been suspended following his conviction for "DUI" (Driving Under the Influence). *Id.*, 106 Ill.Dec. at 544, 505 N.E.2d at 1335. Barton transferred title to his car to the insured, a woman with whom he lived, for the purpose of allowing her to obtain insurance and license plates. Barton and the insured were both aware that Barton did not have a driver's license. One night, the insured drove Barton to a bar, Barton became intoxicated, he fought with the insured and took the car without her permission. Later, Barton was involved in an accident injuring another driver.

The policy in *Economy* covered "[a]ny person using your covered auto," but excluded coverage "[f]or any person using a vehicle without a reasonable belief that the person is entitled to do so." *Id.*, 106 Ill.Dec. at 545, 505 N.E.2d at 1336. The court upheld Barton's exclusion from coverage under the policy on the basis that he knew he could not legally drive the car on his suspended license; he knew that the insured had obtained insurance for herself; he told the issuing insurance agent that he would not drive the car on his suspended license and he took the car, on the day of the accident, without permission. *Id.*, 106 Ill.Dec. at 546, 505 N.E.2d at 1337.

In *Allstate Insurance Company v. United States Fidelity and Guaranty Company, supra,* the insured's pickup truck was driven by a friend who was involved in an accident involving personal injury. The policy excluded from coverage a "person using a vehicle without a reasonable belief that that person is entitled to do so." *Id.* at 552. After consuming a considerable amount of beer, the friend took the insured's truck without permission.

The court upheld the exclusion after it found that the language of the exclusion was "plain and unambiguous." *Id.* at 553. Under that court's approach, "coverage is excluded if the driver [the friend] (a) knew he was not entitled to drive the vehicle, or (b) if he claimed he believed he was entitled to drive the vehicle, but was without reasonable grounds for such belief or claim." *Id.* (citation omitted.) The court, as fact-finder, found that the friend did not believe, due to his level of intoxication, that he was entitled to use the truck. The court concluded that even if the friend had such a belief, that belief was not reasonable because "there is no evidence to indicate that anyone had ever used the [insured's] vehicle without at least asking him for permission." *Id.* at 554.

*State Automobile Mutual Insurance Co. v. Ellis*, 700 S.W.2d 801 (Ky.App.1985), involved the insured's fourteen year old daughter who drove the insured's pick-up truck, without his permission, onto a public highway where she had an accident causing personal injury. The insurer conceded that the daughter was covered under the policy unless excluded as a "person [u]sing a vehicle without a reasonable belief that that person is entitled to do so." *Id.* at 802. The court found that "[t]he policy does not offer guidance as to what constitutes a 'reasonable belief', nor does it specify whether 'entitled' means simply obtaining permission from the owner of the vehicle or whether a valid license from the applicable state would also be required to avoid exclusion from coverage." *Id.* The court summarily held, without analysis, that the lack of guidance created an ambiguity and that the exclusion would not operate to exclude the daughter from coverage based on the rule of construction whereby ambiguities are resolved in favor of the insured. *Id.* at 804.

The fourteen year old daughter of an insured was also involved in *Economy Fire & Casualty Co. v. Kubik*, 142 Ill.App.3d 906, 97 Ill.Dec. 68, 492 N.E.2d 504 (1986). She drove her father's car and was involved in an accident

which resulted in the death of another party.[7] The policy provided coverage for each "family member". The insurer denied coverage on the basis that the daughter was a "person using a vehicle without a reasonable belief that the person is entitled to do so." *Id.*, 97 Ill.Dec. at 70, 492 N.E.2d at 506.

The court concluded that the insurer's policy was ambiguous because the terms "family member" and "any person" were used in the policy's exclusions "in such a way as to create the impression that they refer to mutually exclusive classes." *Id.*, 97 Ill.Dec. at 71, 492 N.E.2d at 507.[8] The court pointed out that some of the exclusions referred only to a "family member", others referred only to the class constituting "any person" and still other exclusions applied to both classes. The court concluded that because the exclusion at issue did not include the term "family member", "it is apparent that at the very least, an ambiguity is created with regard to whether a 'family member' is barred from coverage...." *Id.* The court applied the rule that ambiguous insurance contracts are construed in favor of the insured and upheld coverage for the daughter. *Id.*, 97 Ill.Dec. at 72, 492 N.E.2d at 508.

In *Safeco Insurance Co. of America v. Davis*, 44 Wash. App. 161, 721 P.2d 550 (1986), another fourteen year old daughter of an insured was given permission by an eighteen year old friend to drive the friend's car. The daughter, who was not licensed, was involved in an accident. The policy provided coverage for any "family member" using any auto but excluded from coverage "any person using a vehicle without a reasonable belief that the person is 'entitled' to do so." *Id.*, 721 P.2d at 551.

---

7. The facts in *Kubik* are silent on whether the daughter was driving with or without the insured's permission or whether she had a driver's license or learner's permit.

8. The *Kubik* court acknowledged, however, that those terms standing by themselves have a "clear and unambiguous meaning."

The court noted that the term "entitled" was nowhere defined in the policy and concluded that the exclusion was ambiguous and required the insurer to provide coverage because the term was capable of "[s]everal reasonable interpretations." *Id.*, 721 P.2d at 552. "One is 'permission' or 'consent', which focuses on the relationship between the driver and the owner of the vehicle. Another equally plausible interpretation of 'entitled', apparently that urged by Safeco [the insurer], is 'legal authority', which focuses on a variety of relationships that arise between the driver and the state." *Id.* The court applied the rule that "that which is not clearly excluded from the operation of such contract is included in the operation thereof." *Id.*, 721 P.2d at 553 (citations omitted.) The court reasoned that "if Safeco intended simply to exclude coverage for unlicensed and under aged drivers, it could have done so in clear terms." *Id.*

In *Canadian Indemnity Co. v. Heflin*, 151 Ariz. 257, 727 P.2d 35 (1986), the insured's unlicensed fifteen year old stepson was permitted to drive the car of an eighteen year old friend. The friend, present in the car, encouraged the stepson to race another car. The car went out of control and collided with several other cars. The policy provided coverage for the stepson unless he was a person "using a vehicle without a reasonable belief that the person is entitled to do so." *Id.*, 727 P.2d at 35.

The trial court ruled that the insurer was required to provide coverage because the friend had consented to the use of her car. The court viewed the issue of whether the stepson "had a reasonable belief that he had permission to drive the car [as] one of fact." *Id.*, 727 P.2d at 36. (Citations omitted.) The appellate court agreed with the trial court's construction of the exclusion to mean that "coverage was excluded only where the insured was driving a non-owned vehicle without a reasonable belief that he had the permission of the apparent owner." *Id.*

The court recognized the plausibility of the insurer's argument that the stepson "could not have reasonably

believed that he was 'entitled' to drive the car since he was under aged, unlicensed and speeding," but said "we find such an interpretation insufficient to justify a reversal of the trial court's judgment." *Id.*, 727 P.2d at 37. The court also reasoned that the exclusion was ambiguous and applied the rule that ambiguous insurance contracts are to be construed in favor of the insured and coverage. *Id.* (Citations omitted.) The court also observed that the insurer could have been, but failed to be, precise in its language.

In *Roberts v. United States Fidelity and Guaranty Company*, 498 So.2d 1037 (Fla.App.1986), the insured took his Blazer to an automobile mechanic for "routine servicing". *Id.* at 1038. The insured left his Blazer overnight with the mechanic "with the understanding that [the mechanic] would drive the vehicle for the limited purpose of situating it under the shed at the station or at [the mechanic's] house, adjacent to the station." *Id.* The mechanic, however, took the Blazer to the beach for a picnic with friends and on his way home was involved in a "collision" causing personal injury. *Id.* at 1037–1038.

The entire portion of the court's opinion dealing with the relevant issue is as follows:

> The permissive use exclusion provides in relevant part:
>
> A. We do not provide Liability Coverage for any person:
>
> . . . . .
>
> 8. Using a vehicle without a reasonable belief that that person is entitled to do so.
>
> The trial court ruled that [the mechanic] did not have a 'reasonable belief" that he was entitled to drive [the insured's] vehicle to the beach. Although [the mechanic] testified that he had known [the insured] and his family for a number of years and that he did not think [the insured] would mind if he drove the Blazer, we agree with the trial court in this regard.

In *Nationwide Mutual Insurance Co. v. Southern Trust Insurance Co.*, 174 Ga.App. 513, 330 S.E.2d 443 (1985), the

insured took his car to an automobile mechanic for repairs. The mechanic took the insured's car home and later drove it for "his own pleasure and convenience." *Id.*, 330 S.E.2d at 444. While driving the car, the mechanic fell asleep and had an accident causing personal injury to a passenger and demolishing the car. The insurer excluded the mechanic from coverage under the policy on the basis that he was a person "[u]sing a vehicle without a reasonable belief that that person is entitled to do so." *Id.*

At trial, the mechanic testified that "he always uses his customers' vehicles for his personal reasons." *Id.*, 330 S.E.2d at 445. The insured, a first time customer, testified that he was not aware of that practice. The testimony conflicted on whether the insured had given the mechanic permission "to take the automobile to a paint store to have the paint matched." *Id.*, 330 S.E.2d at 444. Nevertheless, the mechanic conceded "there was no other discussion between them in respect to any other use of the automobile." *Id.*, 330 S.E.2d at 445.

The trial court found that the exclusion "is neither vague nor ambiguous and is not susceptible to more than one construction and that [the mechanic] did not have a reasonable belief that he was entitled to use [the insured] vehicle for his own pleasure and convenience." *Id.*, 330 S.E.2d at 445. On appeal, the Court affirmed on the basis that the trial court's ruling of fact was not clearly erroneous. The Court held:

> The use of the term "reasonable belief" in the exclusionary clause provides an objective standard by which the trier of fact may determine the substance of a claimant's action. From the language of the clause it is clear that coverage is excluded if the driver (a) knew he was not entitled to drive the vehicle, or (b) if he claimed he believed he was entitled to drive the vehicle, but was without reasonable grounds for such belief or claim. *Id.* [330 S.E.2d] at 445. (Citation omitted.)

In *United Pacific Insurance Co. v. Larsen*, 44 Wash. App. 529, 723 P.2d 8 (1986), the insured gave his employee

permission to use the vehicle described in his policy so the employee could visit his "sick mother". *Id.,* 723 P.2d at 9. Instead, the employee picked up two (presumably male) friends and three women and "started for Seattle." *Id.* On the way, the employee fell asleep at the wheel and had an accident causing death and personal injury. The policy excluded from coverage "any person using a vehicle without a reasonable belief that the person [was] entitled to do so." *Id.* (bracketed material in original.)

The trial court upheld the exclusion on the ground that the driver had "exceeded the scope of permission given...." *Id.* On appeal, the Court reversed and remanded on the basis that the trial court's analogy to cases construing omnibus clauses, those which "explicitly refer to the owner's permission or the scope of permission granted," was erroneous. *Id.,* 723 P.2d at 10. The court reasoned that the insurer's change in use from the omnibus clause to the clause at issue reflected a "[c]hange of policy language" which was "significant and binding on insurance companies." *Id.* (Citation omitted.) The court observed: "[g]iven [the insurer's] past policy language it is apparent they knew how to limit coverage to the scope of permission granted. That it employed different and less explicit language in the instant policy is evidence that it meant to convey a different meaning." *Id.*

In *Francois v. Ybarzabel,* 469 So.2d 1001 (La.App.1985), *aff'd,* 483 So.2d 602 (La.1986), the insured's vehicle was driven without permission by a minor friend of the insured's son. While driving, the minor was involved in an accident causing personal injury. The policy provided the primary coverage and the insurance company of the friend's father's provided the excess insurance coverage. The owner's policy excluded coverage on the basis of an "omnibus clause", while the excess policy excluded coverage under the "reasonable belief" exclusion. *Id.* at 1004. Though the case presented no issue regarding the exclusion under the excess policy, the court said, in *dicta,* "[t]he distinction establishes actual permission, either express or implied, as a require-

ment for coverage of the automobile being driven [under an 'omnibus' type policy], while *no* permission was required for coverage of the nonowner driver, only a 'reasonable belief' he had such permission." *Id.* (Emphasis in original.)

█ In the case *sub judice,* we must first determine whether exclusion A.8. is ambiguous and, if so, the ambiguity must be resolved in favor of the non-drafting party, i.e., the appellee. *See Truck Insurance Exchange,* 288 Md. at 435, 418 A.2d 1187. In determining whether the exclusion is ambiguous, "we accord words their ordinary and accepted meanings." *Pacific Indemnity,* 302 Md. at 388, 488 A.2d 486.

Seven of the fourteen cases in which this exclusion was addressed, did not address the ambiguity issue.[9] Of those courts having decided the issue, three held that the exclusion is not ambiguous,[10] three cases held that the exclusion is ambiguous based on the word "entitled"[11] and one case has held that the exclusion is ambiguous based on the "vagueness created by the manner in which [the insurer] use[d] the terms 'family member' and 'any person' interchangeably throughout the policy's exclusions."[12]

Those courts which held that the exclusion is ambiguous based on the term "entitled", have noted that the term has "[s]everal reasonable interpretations." *Davis,* 721 P.2d at 552. *See also Heflin,* 727 P.2d at 36–37; *Ellis,* 700 S.W.2d at 802–803. These courts have stated that the exclusion does not "specify whether 'entitled' means simply obtaining

---

**9.** *See Economy Fire v. State Farm,* 106 Ill.Dec. at 546, 505 N.E.2d at 1337; *Robertson,* 286 S.E.2d at 308; *Roberts,* 498 So.2d at 1039; *Dairyland,* 435 So.2d at 1264; *Eyler,* 519 A.2d at 1008–1010; *Larsen,* 723 P.2d at 10; *Francois,* 469 So.2d at 1004.

**10.** Two of these cases were decided by the same Georgia Court of Appeals: *Nationwide Mutual,* 330 S.E.2d at 445; *Georgia Farm Bureau,* 350 S.E.2d at 326. The third case is *Allstate,* 663 F.Supp. at 553.

**11.** *Davis,* 721 P.2d at 551–552; *Heflin,* 727 P.2d at 37; *Ellis,* 700 S.W.2d at 802–803.

**12.** *Kubik,* 97 Ill.Dec. at 71, 72, 492 N.E.2d at 507, 508.

permission from the owner of the vehicle or whether a valid license from the applicable state would also be required to avoid exclusion from coverage." *Ellis,* 700 S.W.2d at 802. *See also, Heflin,* 727 P.2d at 36–38 ("permission of the apparent owner" versus legally entitled under the applicable state law); *Davis,* 721 P.2d at 552 ("permission or consent" versus "legal authority"). Unable to resolve the ambiguity, those courts have required the insurer to provide coverage on the basis that insurance contracts are to be construed against the insurer. *Davis,* 721 P.2d at 552–553; *Ellis,* 700 S.W.2d at 803; *Heflin,* 727 P.2d at 37. We do not find this approach persuasive.

A better reasoned approach which we do find persuasive and which we adopt, is that which concludes that the exclusion is unambiguous. The court in *Georgia Farm Bureau,* 350 S.E.2d at 326, noted that the focus of the exclusion *sub judice,* as contrasted with the "omnibus clause", is on "the state of mind of the user," and *not* on permission. Under the "state of mind" approach, it is irrelevant whether the driver of the vehicle was actually "entitled" to drive because he had permission, consent, a license, a learner's permit, an ownership interest in the vehicle or some other color of authority. What is relevant, is whether the driver *believed* he was entitled to drive. *Allstate,* 663 F.Supp. at 553–554; *Nationwide Mutual,* 330 S.E.2d at 443. This, we hold, is the clear and unambiguous meaning of the exclusion in the case *sub judice.*

Appellee argues "that an ambiguity may exist with respect to 'family member' and 'any person' as used in the policy exclusion A.8." Appellee's argument is based on the holding of the court in *Economy Fire & Casualty v. Kubik,* 97 Ill.Dec. at 71, 72, 492 N.E.2d at 507, 508. The reasoning of the *Kubik* court necessarily depended upon the policy it was construing. The *Kubik* court concluded that the insurer's policy was ambiguous because the terms "family member" and "any person" were used in the policy's exclusions "in such a way as to create the impression that they refer to mutually exclusive classes." *Id.,* 97 Ill.Dec. at 71, 492

N.E.2d at 507. The *Kubik* court pointed out that some of the exclusions referred only to a "family member", others referred only to the class constituting "any person" and still other exclusions applied to both classes. The *Kubik* court concluded that because the exclusion at issue did not include the term "family member", "it is apparent that at the very least, an ambiguity is created with regard to whether a 'family member' is barred from coverage...." *Id.* In *Georgia Farm Bureau,* 350 S.E.2d at 326, the court construed a policy identical to the policy at issue in the case *sub judice, see* note 6, *supra.* The *Georgia Farm Bureau* court rejected the identical argument made by appellee here. That court said, "[c]overage of all types is set forth in one part and all the exclusions are grouped separately. The language 'any person' refers to each of the nine exclusions listed, including the one in question. It is clear that 'any person' means just that, including the named insured." *Id.,* 350 S.E.2d at 326. We note that the policy at issue in *Kubik* and the policy at issue in *Georgia Farm Bureau* were different, structurally. We hold that there is *no* ambiguity in the exclusion *sub judice* based on the "vagueness created by the manner in which [the insurer] use[d] the term 'family member' and 'any person' interchangeably throughout the policy's exclusions." *Cf. Kubik,* 97 Ill.Dec. at 71, 492 N.E.2d at 507.

 Because we hold that exclusion A.8. is not ambiguous, we must now determine whether the exclusion is applicable to the facts in the case before us. Of the eight cases which have upheld the validity of the exclusion,[13] all but one [14] have upheld the exclusion, either expressly [15] or

---

**13.** *See* notes 1 and 3, *supra.*

**14.** The court in *Georgia Farm Bureau,* 350 S.E.2d at 326, only decided that the exclusion was not ambiguous. This same Georgia Court of Appeals had been the first court to expressly create the "state of mind" test in *Nationwide Mutual,* 330 S.E.2d at 445. It was undisputed in *Georgia Farm Bureau,* 350 S.E.2d at 325, 326 that the driver would have been excluded under the insured's policy unless the exclusion

implicitly [16] on the basis of the following test:

From the language of the clause it is clear that coverage is excluded if the driver (a) knew he was not entitled to drive the vehicle, or (b) if he claimed he believed he was entitled to drive the vehicle, but was without reasonable grounds for such belief or claim.

*Nationwide Mutual,* 330 S.E.2d at 445 (citation omitted); *see also Allstate,* 663 F.Supp. at 308. This test follows logically from the "state of mind" approach we have adopted. Because we are persuaded that this is the better reasoned approach, we will adopt this test as well. In applying this test we are mindful that both prongs may present underlying questions properly submitted to the jury. *See Nationwide Mutual,* 330 S.E.2d at 445; *Allstate,* 663 F.Supp. at 554. When the court acts as the trier of fact, its findings will not be reversed unless clearly erroneous. *See* Rule 1086. Both parties argue, however, that this case presents a legal issue upon which we may substitute our judgment for that of the trial court. Under the facts in this case, since there is no dispute as to any material facts, we agree.

█ In the case *sub judice,* the trial court, though using terms of legal analysis, appeared to make a factual determination that appellee had a reasonable belief that he was

---

was ambiguous and thereby take advantage of the rule requiring a construction in favor of coverage.

**15.** *Nationwide Mutual,* 330 S.E.2d at 445; *Allstate,* 663 F.Supp. at 553.

**16.** *See Economy Fire v. State Farm,* 106 Ill.Dec. at 546, 505 N.E.2d at 1337 (The driver *"knew* he could not legally drive" on a suspended license.) (emphasis added); *Robertson,* 286 S.E.2d at 308 (The driver "had *no reasonable belief* that he had any permission express or implied to use the vehicle.") (emphasis added); *Donegal,* 519 A.2d at 1010 ("The driver consistently stated that *he did not believe* he was entitled to operate the vehicle under the circumstances present at the time of the accident.") (emphasis added); *Dairyland,* 435 So.2d at 1264 (The driver *"knew"* he did not have authority to drive the car) (emphasis added); *Roberts,* 498 So.2d at 1039 (The driver did not have a *"reasonable belief"* that he was entitled to drive the car) (emphasis added).

entitled to use his truck on the day of the accident.[17] The focus of the first prong of the test is whether appellee knew he was *not* entitled to drive and not whether he knew he was entitled to drive. If the latter were the focus of this part of the test, then appellee would have the burden of establishing his entitlement to drive. We do not so read exclusion A.8. Appellee testified "I paid for the truck. I *believe* I had a right to use it." (Emphasis added.) Appellee also testified that, "I didn't have no legal right" to use the truck.[18] On the record before us we do not find that appellee meets the first prong of the test; that he knew that he was not entitled to drive the vehicle. The fact that appellee also knew it was illegal for him to drive on the public highways does not temper his *belief,* based on owner-

---

**17.** The trial court said:
> Certainly [appellee] had [a] right to use the car, but he did not have a right, according to Maryland law, to operate that vehicle upon our highways.
>
> Now, the insurance policy doesn't say a licensed and duly qualified driver. Doesn't say anything about it. All the insurance policy refers to is reasonable belief he has [a] right to use the vehicle.
>
> . . . . .
>
> All [General Accident] had to do was incorporate under coverage a duly qualified and licensed driver and we would not be here today.
>
> Now for me to agree with [General Accident], I have got to decide that appellee was using the vehicle without a reasonable belief that he was entitled to do so, because he knew he did not have a driver's license.
>
> Now I am hesitant on shifting the onus to the policyholder, when the insurance company with all its legal experts could easily have avoided this problem.
>
> . . . . .
>
> So gentlemen, after considering the facts and able argument made by counsel, I am going to hold that under the terms and conditions of the policy that coverage is not excluded for [appellee].

**18.** Appellee concedes on appeal he was "not entitled to operate a vehicle on the public roads of Maryland at the time of the accident and that the accident happened as [appellee] was in fact operating on a Maryland Public Road." *See* MD.TRANSP.CODE ANN., § 16–101(a) (1987 Repl.Vol.). Section 16–101(a) states in, pertinent part:
> *In general*—an individual may not drive or attempt to drive a motor vehicle on any highway in this state unless: (1) he holds a driver's license issued under this title. . . .

ship, that he had a right to use his truck. *See Dairyland,* 435 So.2d at 1264; *Donegal,* 519 A.2d at 1010; *Economy Fire v. State Farm,* 106 Ill.Dec. at 546, 505 N.E.2d at 1337; *Allstate,* 663 F.Supp. at 554. (Cases upholding the validity of the exclusion on the basis that the driver knew he was not entitled to use the insured's car.)

■ In the case *sub judice,* we must consider the second prong of the test. In considering the objective reasonableness of the driver's belief that he was entitled to drive the vehicle, those courts which have addressed the issue focus on several factors: 1) whether the driver had express permission to use the vehicle; 2) whether the driver's use of the vehicle exceeded the permission granted; 3) whether the driver was "legally" entitled to drive under the laws of the applicable state; 4) whether the driver had any ownership or possessory right to the vehicle; and 5) whether there was some form of relationship between the driver and the insured, or one authorized to act on behalf of the insured, that would have caused the driver to believe he was entitled to drive the vehicle. *See Allstate,* 663 F.Supp. at 554; *Nationwide Mutual,* 330 S.E.2d at 444–445; *Economy Fire v. State Farm,* 106 Ill.Dec. at 546, 505 N.E.2d at 1337; *Robertson,* 286 S.E.2d at 307–308; *Roberts,* 498 So.2d at 1038, 1039.

Ordinarily, when there are genuine disputes as to material facts the question of the reasonableness of a driver's belief is one of fact. *Heflin,* 727 P.2d at 36; *Nationwide Mutual,* 330 S.E.2d at 445. "... [T]he material facts are not in dispute, and the controversy is over the proper application of the uncontroverted facts to the exclusion clause contained in the contract." *Economy Fire v. State Farm,* 106 Ill.Dec. at 545, 505 N.E.2d at 1336; *Cheney v. Bell Nat'l Life Ins.,* 70 Md.App. 163, 520 A.2d 402 (1987). In the case *sub judice,* although appellee knew he had some limited permission to use the truck, he knew he did not have permission to take the truck on the public highway at the

time and place of the accident;[19] he knew he did not have a license to drive; he knew he could not obtain insurance without a license; he knew he had been previously apprehended by the police for driving without a license and he admitted to being less than candid with General Accident regarding his use of the truck. Although appellee had: (1) an ownership interest in his truck;[20] (2) limited permission from his parents to drive the truck to a local store and to work; and (3) a belief that his ownership interest entitled him to drive on the public highways, none of these facts were in dispute and the trial court could easily have decided this case on a motion for summary judgment or a motion for judgment. *See Economy Fire v. State Farm*, 106 Ill.Dec. at 543–544, 505 N.E.2d at 1334–1335; *Donegal*, 519 A.2d at 1006; *Georgia Farm Bureau*, 350 S.E.2d at 325; *Robertson*, 286 S.E.2d at 306; *Roberts*, 498 So.2d at 1037. We hold that based on the record in this case the trial court erred as a matter of law in concluding that it was reasonable for the appellee to believe that he was entitled to drive his truck at the time and under the circumstances involved in the accident.[21]

---

**19.** We note that there is some question whether the parent of an emancipated child with an ownership interest in a vehicle may legally deny that child permission to use the vehicle. Nevertheless, under our approach, what is relevant, is how the lack of permission affected appellee's state of mind, i.e., the reasonableness of his belief that he was entitled to drive the truck.

**20.** Without deciding the issue, it is apparent that neither § 16–101(a) of the *Transportation* Article nor the insured's policy specifically bars an unlicensed driver, such as appellee, from all *uses* of his truck. There are uses to which appellee could conceivably put his truck, including driving on his private property [as he has apparently done] that would not contravene either § 16–101(a)'s prohibition against driving on the public highways without a license or the insured's policy exclusion.

**21.** Appellee also argues that "the interpretation requested by appellant cannot be granted because it would violate public policy" and the State's insurance code. Regardless of the merits of this argument, it was not argued to the trial court and is not preserved for our review. Rule 1085.

JUDGMENT REVERSED;
COSTS TO BE PAID BY APPELLEE.