215 So.2d 74 (1968)
Elmore IVEY, Appellant,
v.
NATIONAL FISHERIES, INC., a Florida Corporation, and John Edward Ward, Appellees.
No. 68-101.
District Court of Appeal of Florida. Third District.
November 5, 1968.
*75 Prunty, Olsen & Slotnick, Miami, for appellant.
Granat, Rosenblatt & Roemer, Horton & Schwartz, Miami, for appellees.
Before CHARLES CARROLL, C.J., and BARKDULL and HENDRY, JJ.
PER CURIAM.
The plaintiff below has appealed from a final summary order which dismissed the corporate defendant from liability. The cause of action arose from an auto collision involving the car in which the plaintiff was riding, and a truck owned by the defendant.
The night before the collision, a handy man from National Fisheries, John Edward Ward, was instructed to use the truck to make a delivery after the conclusion of his work, go home, and return with the truck the next morning for work at 7:00 o'clock. Ward did, in fact, make the delivery with the truck and went to an acquaintance's house the same evening. The next morning, he awoke at 6:30 and started to return to work at National Fisheries' business premises. However, he stopped at a local bar in the immediate vicinity of his place of employment and had a few beers with friends. He left the bar between 9:00 and 10:00 o'clock in the morning with two other people, who were unidentified. Ward, feeling that he was too intoxicated to drive properly, asked one of the unidentified persons to drive the truck for him. It was while the truck was being driven by this person that the collision with the plaintiff occurred. Summary judgment was granted in National's favor, dismissing it from liability. By this appeal, we are called upon to determine the liability of an employer for the acts of an employee who deviated from his instructions after having received permission to operate an auto for a combined business and personal purpose.
Before examining the facts at bar, we feel that attention is best focused on the rationale which underlies the development of the "dangerous instrumentality" doctrine in our state.
The dangerous instrumentality doctrine originally developed as a common law means for imposing liability upon the keeper of a dangerous instrument or agency, without any necessity of showing negligent conduct on the part of the defendant. Fletcher v. Rylands, L.R. 1 Ex., 265 (1866), affirmed, L.R. 3 H.L.Cas. 330 (1868). Florida has incorporated a modified version of the dangerous instrumentality concept into the field of agency by a series of cases which hold a master liable for the misuse of a dangerous instrumentality entrusted to a servant; moreover, such liability is imposed without reference to the principle of respondeat superior. Rather, the general rule, as first enunciated by the Supreme Court in Lynch v. Walker, 159 Fla. 188, 31 So.2d 268, is:
"When an owner authorizes and permits his automobile to be used by another, he is liable in damages for injuries to third persons caused by the negligent operation so authorized by the owner." Id., 31 So.2d at 271.
*76 The cases which have developed the law governing an employer's vicarious liability for his employee's negligent use of the employer's auto are uniform in at least one respect: they recognize that such an employer is obligated to the public for torts committed by his employee through negligent use of the auto. Moreover, the employer is not relieved of this obligation when his employee deviates from specific instructions. Rather, once the consent of the employer has been given which allows an employee control and custody of the auto, even for the employee's personal mission, that employer continues to carry his obligation to the public for acts of negligence resulting therefrom. The leading case in this area is Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 16 A.L.R. 255. That case favorably cited the following holding which had been stated in Barmore v. Vicksburg, S. & P.R. Co., 85 Miss. 426, 38 So. 210, 70 L.R.A. 627:
"The servant is empowered by the master to discharge certain duties, and it is incumbent upon him to exercise the same care and attention which the law requires of the master; and, if that care and attention be about the management and custody of dangerous appliances, the master cannot shift the responsibility connected with the custody of such instruments to the servant to whom they have been intrusted, and escape liability therefor. This rule arises from the absolute duty which is owing to the public by those who employ in their business dangerous agencies or appliances, engines, or instruments liable, if negligently managed, to result in great damage to others." 86 So. 629, 632.
We are not unmindful that the dangerous instrumentality doctrine has given rise to an area of uncertainty, and the cases in this field attest to the judicial efforts to solidify the law: An employer is not liable for an employee's acts when the auto concerned was taken or used without the employer's permission. Johnson v. Mills, Fla. 1948, 37 So.2d 906; Pearson v. St. Paul Fire and Marine Ins. Co., Fla. App. 1966, 187 So.2d 343; Hankerson v. Wilcox, Fla.App. 1965, 173 So.2d 747; Hudson v. Smith, Fla.App. 1961, 135 So.2d 450.
Unauthorized use of an auto has been held to include those situations wherein the employer's permission to use the vehicle extended only to the immediate business premises and the tort occurred outside this boundary. Therefore, that fact served to preclude the employer's liability. Sykes v. Babijuice Corp., Fla. 1953, 63 So.2d 65; Keller v. Florida Power & Light Co., Fla. App. 1963, 156 So.2d 775.
But, once it has been established that the employee has the employer's authorization to use the auto, the policy of the law has favored the imposition of liability upon the employer. Jacksonville Paper Co. v. Carlile, 153 Fla. 661, 15 So.2d 443, held the employer liable when his truck driver had deviated from an appointed route by some 20 miles before the tort occurred. Though the court tersely stated that tension existed between the doctrine of respondeat superior and the doctrine of dangerous instrumentality, it nevertheless recognized that an employer may be vicariously liable when his employee has deviated from instructions, such question being within the jury's province.
Even a bailor of an auto has been held liable for torts committed by his bailee. Susco Car Rental System of Florida v. Leonard, Fla. 1959, 112 So.2d 832. In Susco, the bailee had deviated from his bailor's specific instructions by allowing a third person to operate the auto. Nevertheless, the bailor was liable for the negligence of such a third person, and the court concluded:
"* * * [t]he logical rule, and, we think, the prevailing rationale of the dangerous instrumentality cases, is that when control of such a vehicle is voluntarily relinquished to another, only a *77 breach of custody amounting to a species of conversion or theft will relieve an owner of responsibility for its use or misuse. The validity or effect of restrictions on such use, as between the parties, is a matter totally unrelated to the liabilities imposed by law upon one who owns and places in circulation an instrumentality of this nature."
Returning now to the facts of the case sub judice, we find that it is undisputed that Ward had been given express permission to retain the truck overnight to use in going home and returning to work the following day. The fact that Ward stopped en route at a local bar cannot, according to the case holdings set forth above, absolve his employer from liability for Ward's acts. Since we are in accord with the aforementioned cases, and the policies upheld therein, we must hold that the trial court erred in entering a summary final judgment in favor of the appellee, National Fisheries, Inc. Accordingly, the judgment appealed is reversed.
Reversed.