390 So.2d 76 (1980)
Edward KOBETITSCH, Appellant,
v.
AMERICAN MANUFACTURERS' MUTUAL INSURANCE COMPANY, Appellee.
No. 80-275.
District Court of Appeal of Florida, Third District.
October 14, 1980.
Franklin, Entin, Kimler & Marks and Lewis S. Kimler, North Miami Beach, for appellant.
Bradford, Williams, McKay, Kimbrell, Hamann, Jennings & Kniskern and David S. Currie, Miami, for appellee.
Before HENDRY, SCHWARTZ and NESBITT, JJ.
SCHWARTZ, Judge.
Kobetitsch seeks review of a summary declaratory judgment which determined that he was not entitled to the uninsured motorist benefits of an American Manufacturers' insurance policy issued to his employer, the Atlantic Barber & Beauty Supply Company. The UM endorsement defined an insured as "any ... person occupying an insured highway vehicle," but provided that "the term `insured highway vehicle' shall not include a vehicle being used without the permission of the owner."[1] Since Kobetitsch was injured by an uninsured motorist while driving a van leased *77 by Atlantic which was otherwise covered by the policy, the case turns on whether he was using it with his employer's "permission" when the accident occurred. We hold that the carrier was not entitled to judgment as a matter of law on this issue and therefore reverse the judgment below.
The record shows that Atlantic's van drivers, including Kobetitsch, were granted permission to drive their vehicles to their homes after they finished work for the day and keep them there overnight. Kobetitsch lived in Dade County but his route for Atlantic covered Fort Lauderdale and Pompano Beach. On the day of the accident, he apparently finished work at 6:00 P.M. in Broward County. At about 10:00 P.M.-the record is silent as to his whereabouts in the meantime-after having picked up a passenger in contravention of company rules, he secured fuel for the van at a company-approved gas station in North Miami Beach. He pulled out of the station, intending, he said, to drop the rider off at his home and then head directly to Kobetitsch's own residence. The record presented to us does not disclose whether or not the passenger's house was on the way from the station to the appellant's home. A short distance from the station, the van was rear-ended by an uninsured driver and Kobetitsch was seriously hurt.
On this rather skimpy record, both parties in the declaratory judgment action brought by American Manufacturers moved for summary judgment. The insurance company argued that Kobetitsch's use of the van was not with his employer's permission because of the four-hour delay after he left work; the fact that he was carrying a passenger; and his plans to drop the rider off, rather than merely to drive the vehicle to his own residence. In the trial court, the appellant did not really take issue with these contentions. He asserted, however, that the definition of "permission" under the policy is equivalent to the standard applied in imposing liability under the Florida dangerous instrumentality doctrine; that is, that when one initially entrusts a motor vehicle to another, he is liable for its negligent operation "no matter where the driver goes, stops or starts." Boggs v. Butler, 129 Fla. 324, 176 So. 174, 176 (1937). Chase & Co. v. Benefield, 64 So.2d 922 (Fla. 1953), and Ivey v. National Fisheries Inc., 215 So.2d 74 (Fla. 3d DCA 1968) were cited both below and in this court for the proposition that even the most extreme violations by an employee of his employer's instructions concerning the use of its vehicle will not relieve it of responsibility to injured third persons. Thus, Kobetitsch contended that Atlantic's admitted initial permission to use the van was all that was required to render him an insured under the policy, no matter what happened thereafter. In resolving this issue, as it was thus framed for decision, against the appellant, the trial judge was plainly right. As clearly revealed by the dissenting opinion (which cites the Chase & Co. case), this court held in Ball v. Inland Mutual Ins. Co., 121 So.2d 470 (Fla. 3d DCA 1960), cert. discharged, 128 So.2d 130 (Fla. 1961), that an original entrustment which would impose tort liability on the employer, does not-as a matter either of public policy or of the proper construction of the clause in question-alone constitute the "permission" to operate required by the insurance policy. In so doing, we implicitly rejected the authorities, many of which were cited in the dissent in Ball, which apply the so-called "first instance permission" or "liberal" rule of the interpretation of this very common policy language.[2] See, cases collected, Annot., Automobile liability insurance: permission or consent to employee's use of car within meaning of omnibus coverage clause, 5 A.L.R.2d 600, 629-636 (1949); 1-6 A.L.R.2d, Later Case Service, at 661-63 (1971). In Winters v. Phillips, 234 So.2d 716 (Fla. 3d DCA 1970), cert. denied, 238 So.2d 424 (Fla. 1970), *78 it was similarly held that the "implied consent" tort doctrine was not applicable to the interpretation of a clause almost identical to the one now before us. But see, Ray v. Earl, 277 So.2d 73 (Fla. 2d DCA 1973), cert. denied, 280 So.2d 685 (Fla. 1973).
The fact that Kobetitsch was therefore not entitled to summary judgment in his favor does not result in an affirmance of the summary judgment entered against him. See, Spear v. Martin, 330 So.2d 543 (Fla. 4th DCA 1976); Mullen v. Mullen, 184 So.2d 917, 919 (Fla. 2d DCA 1966). This is so because, unlike the factual situation in Ball (as well as those in Chase & Co. and Ivey), the record does not support the conclusion that Kobetitsch's use of the van was not with Atlantic's permission, as a matter of law. At the time of the accident, he had just gassed Atlantic's vehicle as he was authorized and indeed directed to do. Moreover, he was operating the vehicle on a course between his job in Broward County and his home in Dade which was in accordance with the specific permission Atlantic had granted him. Under these circumstances, the facts that several hours had elapsed after the end of the work day, and that he intended to drop off his rider[3] before going home, raise, at the most, factual questions-which could not properly be resolved by summary judgment[4]-as to whether there was in fact a deviation from his employer's authorization and, if so, whether the deviation was so consequential and substantial as to result in a denial of coverage. See generally, Bekaert v. State Farm Mut. Auto. Ins. Co., 230 F.2d 127 (8th Cir.1956); Gulla v. Reynolds, 82 Ohio App. 243, 81 N.E.2d 406 (1948). In stating the pertinent issue in this way, we expressly adopt the "moderate" or "minor deviation" rule[5] as to the construction of a permissive use clause. See cases collected, Annot., supra, 5 A.L.R.2d at 636-43; 1-6 A.L.R.2d, Later Case Service at 663-64 (1971); 7 Am.Jur.2d Automobile Insurance § 266 (1980). This doctrine, which has been accepted by the clear majority of the courts which have considered the question, occupies an appropriate middle ground between the harsh "strict conversion" rule, see, Annot., supra, 5 A.L.R.2d at 626-29; 1-6 A.L.R.2d, Later Case Service at 661 (1971), under which even the slightest departure from the scope of permission granted to the employee will obviate coverage,[6] and the "initial permission" rule, which we have already declined to follow in the Ball case. See, Employers Mutual Casualty Co. v. Poe, 191 So.2d 541 (Miss. 1966). While it is impossible to articulate the exact parameters of the "minor deviation rule,"[7] it may be generally said that:
if the use made by employee is not a gross violation of the terms of the bailment, even though it may have amounted to a deviation, protection is still afforded such employee. 5 A.L.R.2d at 636.
The precise circumstances of the individual case are of course all-important in determining the result of the application of this rule. Compare, e.g., Ball v. Inland Mutual Ins. Co., supra, with e.g., State Farm Mutual Auto. Ins. Co. v. Birmingham Electric *79 Co., 254 Ala. 256, 48 So.2d 41 (1950) and Phoenix Ins. Co. v. Bently, 126 Ga. App. 857, 191 S.E.2d 887 (1972). Because of the legal posture in which this cause was presented below, these facts have not yet been fully developed; it is therefore inappropriate to speculate further about the eventual outcome of the case at bar.
For the reasons stated, the judgment below is reversed and the cause remanded for proceedings consistent herewith.
Reversed and remanded.
NOTES
[1] Although the liability portion of the policy was not made a part of the record, we assume from the fact that Kobetitsch does not claim to the contrary that its definition of "insured" is no broader than the UM coverage. While UM need not be provided to those who are not insured for liability purposes, Southeast Title & Insurance Co. v. Thompson, 231 So.2d 201 (Fla. 1970); France v. Liberty Mutual Ins. Co., 380 So.2d 1155 (Fla. 3d DCA 1980), it is conversely the case that liability insureds may not be excluded from UM coverage. Salas v. Liberty Mutual Fire Ins. Co., 272 So.2d 1 (Fla. 1972); Mullis v. State Farm Mutual Automobile Ins. Co., 252 So.2d 229 (Fla. 1971); § 627.727(1), Fla. Stat. (1977) (Precluding issuance of auto liability policy unless UM coverage provided "for the protection of persons insured thereunder.")
[2] We ascribe no significance to the fact that the policy involved in Ball referred to the "actual use" of the vehicle. See, Annot., Automobile Insurance-Coverage, 5 A.L.R.2d 600, 607 (1949).
[3] The mere violation of a "no-riders" policy does not render the "use" of the vehicle beyond the permission of the employer. Hawley v. Indemnity Ins. Co. of North America, 257 N.C. 381, 126 S.E.2d 161 (1962); Annot., supra, at 5 A.L.R.2d 654-56.
[4] Holl v. Talcott, 191 So.2d 40 (Fla. 1966).
[5] We recognize the accuracy of the comment in American Fidelity Co. v. North British & Merc. Ins. Co., 124 Vt. 271, 204 A.2d 110, 112 (1964) that "[t]he minor deviation rule is troublesome because there is so little of a rule about it." We think it nonetheless useful to characterize our views as involving the adoption of a particular "rule"-although the "rule" involves, as this one does, an assessment of a host of factual variables-if only to differentiate it from the competing litmus-paper type doctrines which we reject.
[6] The adoption of this rule would be in obvious contravention of the manner in which Florida courts must interpret the terms of insurance policies in general and UM coverage in particular. See, Stuyvesant Insurance Co. v. Butler, 314 So.2d 567 (Fla. 1975); Mullis v. State Farm Mutual Automobile Ins. Co., supra; Continental Casualty Co. v. Borthwick, 177 So.2d 687 (Fla. 1st DCA 1965).
[7] See note 5, supra.