440 So.2d 1311 (1983)
AVIS RENT-A-CAR SYSTEMS, INC., Appellant,
v.
Georgina GARMAS and Jose Garmas, Appellees.
No. 82-2185.
District Court of Appeal of Florida, Third District.
October 25, 1983.
Rehearing Denied December 8, 1983.
*1312 Highsmith, Strauss & Glatzer and Phillip Glatzer, Miami, for appellant.
Daniels & Hicks and Patrice A. Talisman, Feldman, Abramson, Smith, Magidson & Levy, for appellees.
Before SCHWARTZ, C.J., and DANIEL S. PEARSON and JORGENSON, JJ.
SCHWARTZ, Chief Judge.
Avis Rent-A-Car was a defendant below in a personal injury action arising from an accident admittedly caused by the grossly negligent operation of one of its rental vehicles. It appeals from an order granting the plaintiffs a new trial after a jury verdict in its favor. We affirm.
The record shows that Scott Lawrence and a friend, Laird Ferguson, went to an Avis office in Ft. Lauderdale to rent a car for a weekend trip to the Florida Keys. Lawrence had a credit card but his driver's license had been suspended; Ferguson had a valid license but no credit card. Accordingly, the Avis representative required both Lawrence and Ferguson to execute the rental agreement which stated that Ferguson was to be the "only driver." Lawrence, however, specifically placed his signature or initials at three separate places where, under the contract, the applicable Avis manual, or both, only the "renter" of the car was to sign.[1] Indeed, Avis' answer in this case admitted that Lawrence had "entered into a rental agreement with Defendant, Avis," while denying responsibility for the misuse of the car because the contract contemplated its operation only by Ferguson. The *1313 accident in question occurred three days later when, on his way to gas the car for the trip home, Lawrence, who had taken the keys while Ferguson was asleep, drove at 70-80 miles per hour onto the wrong side of U.S. 1 and struck a vehicle occupied by Georgina Garmas head-on.
Mrs. Garmas, who was severely injured, and her husband sued Lawrence and Avis for compensatory and punitive damages in the Monroe County Circuit Court. Lawrence defaulted, and Avis did not contest that his negligence had caused the accident. After the trial court directed a verdict in Avis' favor as to punitive damages, the jury, in answer to special interrogatories, found in favor of Avis and assessed $20,000 for Mrs. Garmas and $5,000 for Mr. Garmas in compensatory damages, as well as $25,000 in punitive damages, all against Lawrence alone.[2] In those portions of the order now before us,[3] the trial court then concluded that the verdict for Avis on liability and the awards of compensatory damages were contrary to the manifest weight of the evidence and ordered a new trial on both issues.
Under the Florida dangerous instrumentality doctrine, the owner of a vehicle is liable to third persons for its negligent operation by anyone to whom it has been entrusted, even if the bailee grossly violates the owner's express instructions concerning its use. Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920); Susco Car Rental System of Florida v. Leonard, 112 So.2d 832 (Fla. 1959); Ivey v. National Fisheries, Inc., 215 So.2d 74 (Fla. 3d DCA 1968), and cases cited. As set forth in the trial court's lengthy and well-reasoned order, the contents of which fully complied with the procedural prerequisites established in Wackenhut Corp. v. Canty, 359 So.2d 430 (Fla. 1978), we agree  and surely do not find the abuse of discretion required to reverse such a conclusion, Ford Motor Co. v. Kikis, 401 So.2d 1341 (Fla. 1981)  that the jury's finding that Avis did not under the circumstances and within the meaning of this rule surrender control of its car to its self-designated "renter," Lawrence, was, at least,[4] contrary to the manifest weight of the evidence. See Metzel v. Robinson, 102 So.2d 385 (Fla. 1958) (aunt who, solely for financing purposes, took title to car used and paid for only by nephew liable as matter of law for operation of vehicle). Avis contends that Lawrence's driving the vehicle despite the agreement that only Ferguson was to do so amounted to a "species of conversion" which, under dicta which appears in Susco at 112 So.2d 836, insulates it from responsibility. The actual holding of Susco is, however, itself a complete answer to this contention. In determining that a rental-vehicle-lessee's departure from an express agreement that he could not permit anyone else to operate it did not affect the rent-a-car company's liability, the supreme court held:
It is plain that these provisions are based on the assumption that an owner cannot *1314 deliver a vehicle into the hands of another without assuming, or continuing, his full responsibility to the public. Such statutory provisions would, of course, be quite nugatory if ultimate liability could be escaped by contract of the owner.
In the final analysis, while the rule governing liability of an owner of a dangerous agency who permits it to be used by another is based on consent, the essential authority or consent is simply consent to the use or operation of such an instrumentality beyond his own immediate control. Only to that limited extent is the issue pertinent when members of the public are injured by its operation, and only in a situation where the vehicle is not in operation pursuant to his authority, or where he has in fact been deprived of the incidents of ownership, can such an owner escape responsibility. Certainly the terms of a bailment, either restricted or general, can have no bearing upon that question. [e.s.]
112 So.2d at 837. It is clear that, by the very same token, Lawrence's operation of the car when he was not supposed to was likewise merely a breach of the "terms of the bailment," and not the "species of conversion or theft" to which Susco refers.[5]
In the light of the extremely severe personal injuries and derivative damages sustained by the respective plaintiffs, as shown by the record and documented in the order, there was similarly no abuse of discretion in the finding that the compensatory awards were so grossly inadequate that a new trial was required on this issue as well. Baptist Memorial Hospital, Inc. v. Bell, 384 So.2d 145 (Fla. 1980); Wackenhut Co. v. Canty, supra; Russ v. Iswarin, 429 So.2d 1237 (Fla. 2d DCA 1983); Lindgren, Inc. v. Dames, 382 So.2d 427 (Fla. 3d DCA 1980). The order under review, in its entirety, is
Affirmed.[6]
NOTES
[1] The new trial order accurately relates:

The rental contract is clear in its terms. The only mention or use of the verb "to rent" is contained on the back page of the agreement drafted by AVIS:
TERMS FOR RENTING AN AVIS CAR
"I rent from you the car described on the other side of this agreement and I agree to the terms below and on the other side. I, me and my refer to the person who signs this agreement. You and your refer to Avis." (Emphasis supplied)
In the only block provided by AVIS on its rental form for a signature (Box 17), only one signature appears. The signature is that of SCOTT LAWRENCE, who states that, "I have read and agree to the terms on both sides of this agreement."
Only SCOTT LAWRENCE'S signature appears in Box (17) of the Rental Agreement. The Avis Manual provides that for such box:
"... Have the renter sign the Rental Agreement." (Emphasis supplied)
Only SCOTT W. LAWRENCE'S initials appear in Box (38) of the Rental Agreement. The Avis Manual provides for such box:
"The Renter initials the space... ." (Emphasis added)
Only SCOTT W. LAWRENCE'S initials appear in Box (41B) of the Rental Agreement. The Avis Manual provides for such box:
"The Renter initials the space... ." (Emphasis supplied)
On the other hand, the signature of LAIRD FERGUSON also appears on said form, but only in Box (18), entitled "CORRECTED BILLING NAME AND ADDRESS."
[2] The verdict form was as follows:

WE, the jury, return the following verdict:
1. Was SCOTT W. LAWRENCE a rentee of the AVIS automobile in question?
 YES ____ NO X
2. Was AVIS negligent in failing to foresee that SCOTT W. LAWRENCE would violate the prohibition in the rental agreement and drive the rental vehicle?
 YES ____ NO X
3. What are the total damages of the plaintiffs?

 GEORGINA GARMAS $ 20,000
 -------
 JOSE GARMAS $ 5,000
 -------

4. Should punitive damages be assessed against SCOTT W. LAWRENCE?
 YES X NO ____
(If your response is in the affirmative, please complete Interrogatory Number 5. Otherwise, have your foreperson date and sign your verdict and return it to the Court.)
5. Amount of punitive damages: $ 25.000
[3] The trial court also awarded Lawrence a new trial as to punitive damages. The plaintiffs do not seek review of that portion of the order.
[4] Indeed, although we do not directly so decide because of the appellees' failure to raise the point here, it may be, as the trial judge noted, that the plaintiffs are entitled to a directed verdict in their favor on Avis' liability. Our decision does not foreclose that relief being granted at the new trial.
[5] Avis claims also that a jury question on the "conversion" issue was presented by conflicting testimony as to whether Lawrence had Ferguson's permission to drive. Cf., Thomas v. Atlantic Associates, Inc., 226 So.2d 100 (Fla. 1969); Pearson v. St. Paul Fire & Marine Ins. Co., 187 So.2d 343 (Fla. 1st DCA 1966). Since, however, and as we have seen, the evidence showed that Lawrence was himself given custody of the car by the owner Avis, this issue is entirely immaterial. On this point, the lower court correctly observed:

There could be no "species of theft" by the one given custody and control of a motor vehicle through a rental agreement... . Whether SCOTT W. LAWRENCE drove the vehicle with or without the consent of LAIRD FERGUSON would be of no moment; one does not commit theft against himself.
[6] By cross-appeal, the plaintiffs challenge the direction of a verdict for Avis on their punitive damages claim. We do not pass on the merits of this contention because any error was rendered harmless, 3 Fla.Jur.2d Appellate Review § 362 (1978), by the jury verdict, n. 2, supra, that Avis had not been guilty either of renting the car to Lawrence in arguable violation of Sec. 322.38, Fla. Stat. (1981), or even of simple negligence. Since the defendant's potential liability must therefore be based solely upon its vicarious responsibility without fault as the owner of the car under the dangerous instrumentality doctrine, it cannot be subject to punitive damages. Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981); Waldron v. Kirkland, 281 So.2d 70 (Fla. 2d DCA 1973).