**Esperanza GARCIA, Plaintiff**

v.

**GEICO GENERAL INSURANCE, Defendant.**

**Geico General Insurance, Plaintiff**

v.

**Edgar Baena, et al., Defendants.**

**Case Nos. 07–23044–CIV, 07–23358–CIV.**

United States District Court, S.D. Florida, Miami Division.

Nov. 17, 2008.

Mark A. Glassman, Esq., Weston, FL, Marc R. Ginsberg, Esq., Mandina & Ginsberg, Miami Lakes, FL, for Plaintiff Esperanza Garcia.

James Kendall Clark, Clark Robb Mason Coulombe & Buschman, Miami, FL, for Defendant Geico General Insurance.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT

ADALBERTO JORDAN, District Judge.

These cases arose out of a tragic car crash that took the life of Poala Penafiel on the morning of December 17, 2006. All parties have filed motions for summary judgment. At issue in each of these motions is whether Geico is required to cover Edgar Baena, the driver of the car that crashed into Ms. Penafiel, for claims relating to the car accident. For the reasons set forth below, the cross-motions for summary judgment [D.E. 91, D.E. 92 in No. 07–23358; D.E. 68, D.E. 69 in No. 07–23044] are DENIED.

I. STANDARD

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See id.* at 323, 106 S.Ct. 2548. That is, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct.

1348, 89 L.Ed.2d 538 (1986) (*quoting First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). In making this assessment, the court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," and "resolve all reasonable doubts about the facts in favor of the nonmovant." *See Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997).

## II. FACTS

Edgar Baena's brother, Miguel, flew into South Florida on vacation in mid-December, 2006, and rented a Mercedes Benz sedan from Enterprise Rent–a–Car at the Fort Lauderdale airport. Edgar did not accompany Miguel to pick up the car and was not listed as an additional driver on the rental agreement, nor was he privy to any of the terms of the contract. *See* Dep. of Miguel Baena, at 6; Dep. of Edgar Baena, at 19–21.

On the evening of Saturday, December 16, the Baena brothers went to a Miami Heat game, followed by a night out on South Beach that lasted until the wee hours of the next morning. *See* Dep. of Miguel Baena, at 13–14. On State Road 112 in Miami, with Edgar at the wheel, the Mercedes crashed into the car driven by Poala Penafiel. She was pronounced dead at the scene. *See* Accident Report. Miguel has given conflicting accounts of his role in allowing Edgar to drive the car, so there is conflicting evidence regarding the circumstances that put Edgar behind the wheel. Viewing the evidence in the light most favorable to Edgar and Ms. Garcia, Miguel let Edgar drive so that he could sleep in the backseat. *See* Dep. of Miguel Baena, at 14–15; Dep. of Edgar Baena, at 25–26. If the evidence is viewed in the light most favorable to Geico, Miguel drank too much, passed out in the car, and

does not remember giving Edgar permission to drive the car. *See* Dep. of Patricia Schillaci, at 19–20.

Both lawsuits were filed in the aftermath of that accident. In the first case (No. 07–23044), Ms. Garcia, as representative of the estate of Ms. Penafiel, seeks enforcement against Geico, (Edgar's insurer) of the *Coblentz* agreement she reached with Edgar, whereby he agreed to the entry of a consent judgment as resolution of the estate's wrongful death action against him. *See* Complaint [D.E. 1, at ¶¶ 5–10, 28, Ex. "F"]; *Coblentz v. Am. Sur. Co. of N.Y.,* 416 F.2d 1059 (5th Cir. 1969). In the second case (No. 07–23358), Geico seeks a declaratory judgment relieving the company of its obligation to indemnify Edgar on the grounds that the non-owner's coverage term of his insurance policy does not extend to his use of the rental car. As the interests of Edgar and Ms. Garcia intertwined with their *Coblentz* agreement, the two cases were consolidated for the purposes of determining Geico's coverage obligation. *See* Order Consolidating Cases [D.E. 26 in No. 07–23044].

## III. ANALYSIS

Edgar Baena's individual insurance policy with Geico covered him against "damages which an insured becomes legally obligated to pay because of . . . bodily injury sustained by a person, . . . [a]rising out of the ownership, maintenance or use of the owned auto *or a non-owned auto.*" The contract goes on to specify with respect to a non-owned auto that "[s]uch use must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission."

The parties have stipulated that Geico's denial of coverage to Edgar is based solely on its conclusion that his use of the rental car did not fall within the insurance policy's definition of permissive use. It is

undisputed that Edgar believed that his use of the rental car to be permissive. It is also undisputed that Edgar did not have the permission of Enterprise. Thus, the critical issue at the summary judgment stage is whether or not Edgar was *reasonable* in his mistaken belief as a matter of law.

Although there is unanimity between the parties that the undisputed evidence forecloses any triable question of fact on this issue, the sides are decidedly at odds as to whom the benefit of summary judgment should inure. Geico, on the one hand, argues that because Edgar did not know who owned the car, he could not have reasonably believed he had Enterprise's consent to drive it. Conversely, Edgar and Ms. Garcia argue that Edgar's belief was reasonable as a matter of law because he was unaware of the rental agreement's "additional driver" prohibition when his brother asked him to drive the car.

The nuances of this case apparently present a novel issue in the state of Florida. Until recently, Enterprise's insurer would have been strictly and vicariously liable for the accident under the state's "dangerous instrumentality" doctrine. *See, e.g., Aurbach v. Gallina,* 753 So.2d 60, 63 (Fla.2000) ("[W]hen owners authorize other individuals to use their vehicles, they are liable for the damages that the other authorized drivers negligently cause to third parties."). The Florida Supreme Court extended this primary liability to rental-car companies in *Susco Car Rental System v. Leonard,* 112 So.2d 832, 835–36 (Fla.1959). However, in 2005, the United States Congress pre-empted the application of dangerous-instrumentality liability to rental-car companies with the passage of the so-called Graves Amendment:

> An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—
>
> . . .
>
> the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles. . . .

49 U.S.C. § 30106(a); *see also Garcia v. Vanguard Car Rental USA, Inc.,* 540 F.3d 1242, 1253 (11th Cir.2008) (upholding the constitutionality of the Graves Amendment and noting that it abrogates dangerous-instrumentality liability for rental-car companies). Under Florida's pre-Graves Amendment regime, the primary focus in rental-vehicle traffic-accident cases was on the liability of the rental company's insurer. Accordingly, pre-Graves Florida case law provides little guidance (and certainly no definitive guidance) in determining Geico's liability as the insurer of a "second-hand permittee" such as Edgar Baena.

That being said, existing Florida precedent appears incompatible with Geico's argument that Edgar's use of the rented vehicle was non-permissive *as a matter of law.* Addressing the issue of permissive use in a case where an employee used a company van outside the scope of consent afforded him by his employer, the Florida Supreme Court determined that the "minor deviation" rule would apply to determine the reasonableness of the use: "If the use made by employee is not a gross violation of the terms of the bailment, even though it may have amounted to a deviation, protection is still afforded such employee." *Kobetitsch v. Am. Mfrs. Mut. Ins. Co.,* 390 So.2d 76, 78 (Fla.1980). The Florida Supreme Court went on to note that whether the employee's deviation was so consequential as to warrant a denial of

coverage posed a question of fact for which summary judgment was inappropriate. *See id.* at 79. *Kobetitsch* is admittedly inapposite to the extent that it governs only those cases where some form of consent is given to the driver by the owner, but it can nonetheless be read to contravene Geico's contention that Edgar's use of the rental vehicle, in violation of the terms of Miguel's rental agreement, voids his coverage as a matter of law.

Similarly, in *Susco,* the Florida Supreme Court analyzed a more comparable situation where a vehicle leased by a car-rental company was operated (and crashed) by a driver with the permission of the lessee, but without the knowledge or consent of the company:

> When this defendant turns over an automobile to another for a price, he in actuality intrusts that automobile to the renter for all ordinary purposes for which an automobile is rented. The fact that the owner had a private contract or secret agreement with the renter cannot make such restrictions a bar to the rights of the public. The restrictions agreed upon do not change the fact that the automobile was being used with the owner's consent. Nor does it appear that the car was not being used for the purpose for which it was rented i.e., the pleasure, convenience or business of the renter.

*Susco,* 112 So.2d at 834–35. Although *Susco* determined the liability of the car-rental agency, its logic may extend to the liability of the second-hand permittee. Thus, the term in the private contract between Miguel and Enterprise prohibiting use by any additional drivers is not dispositive of the reasonableness of Edgar's use, given Edgar's lack of knowledge about this term. Miguel may have breached his contract with Enterprise by allowing his brother to drive, but the terms of the agreement—to which Edgar was not privy—cannot render Edgar's use of the car unreasonable as a matter of law.

Along those same lines, Ms. Garcia and Edgar are similarly unconvincing in their argument that Edgar's use of the rental car was so clearly reasonable as to preclude any genuine question of fact. It would be well within the province of a jury to conclude that Edgar should have known that his use of the rental car was not permitted and was therefore objectively unreasonable, given the prevalence of these prohibitions in rental contracts, and the fact that Edgar had rented cars on several prior occasions. A jury could also reject Miguel's claim that he allowed Edgar to drive the car, given the inconsistencies in Miguel's testimony. Accordingly, both sides are incorrect in their assertions that no question of fact exists in this case.

This conclusion is in accordance with cases from other jurisdictions looking at insurance policy provisions such as the "reasonable belief" term in Geico's contract. Courts seeking to determine whether drivers fall under similar "permissive use" clauses usually look at five factors:

(1) whether the driver had express permission to use the vehicle; (2) whether the driver's use of the vehicle exceeded the permission granted; (3) whether the driver was "legally" entitled to drive under the laws of the applicable state; (4) whether the driver had any ownership or possessory right to the vehicle; and (5) whether there was some form of relationship between the driver and the [owner], or one authorized to act on behalf of the [owner], that would have caused the driver to believe he was entitled to drive the vehicle.

*Gen. Accident Fire & Life Assurance Corp. v. Perry,* 75 Md.App. 503, 541 A.2d 1340, 1350 (1988); *Omaha Prop. & Cas. Ins. Co. v. Peterson,* 865 S.W.2d 789, 791 (Mo.Ct.App.1993); *Wooh v. Home Ins. Co.,*

84 Wash.App. 781, 930 P.2d 337, 339–40 (1997); *Metro. Prop. & Cas. Ins. Co. v. Espach,* 313 F.Supp.2d 109, 114 (D.Conn. 2004); *Athridge v. Aetna Cas. & Sur. Co.,* No. 96–2708–CIV, 2006 WL 2844690, at *6 (D.D.C. Sept. 29, 2006); *see also Espach,* 313 F.Supp.2d at 114 (reasonable belief must be objectively reasonable).

In *Wooh,* for example, Ms. Wooh negligently drove.a car owned by her husband's employer, which her husband had been expressly told was to be used only by company employees. The trial court, as trier of fact, found that Ms. Wooh was reasonable in her belief that she could drive the car, because her husband regularly drove the vehicle and had expressly told her that she could use the car on the day of the accident. *See Wooh,* 930 P.2d at 338. The appellate court affirmed the trial court's declaratory judgment finding Ms. Wooh was covered under her insurance policy based on the weight of the five factors dictating the reasonableness of her use of the non-owned vehicle. *See id.* at 340.

Just as *Wooh* posed a question of fact, so do the circumstances of the present case, due to the inherently fact-specific nature of the analysis. Edgar arguably had express permission to use the vehicle, but from someone he knew was not the owner of the car, and his use of the car clearly exceeded the scope of the permission afforded to Miguel from Enterprise. Additionally, although Miguel had a possessory interest in the rental vehicle, Enterprise told him explicitly that his interest was not transferable without the company's express authorization, a ubiquitous restriction in rental-car contracts. This common limitation on Miguel's right of possession makes it impossible to determine at this juncture whether Edgar should have had an entitlement to drive the vehicle, and creates a clear question of

fact for trial. Accordingly, summary judgment is inappropriate in this case.