Esperanza GARCIA, as Representative of the Estate of Paola Penafiel, Plaintiff

v.

GEICO GENERAL INSURANCE CO., Defendant.

Geico General Insurance Co., Plaintiff

v.

Edgar Baena, Miguel Baena, Esperanza Garcia, as personal representative of the Estate of Paola Penafiel, Enterprise Leasing Co., et al., Defendants.

Case No. 07–23044–CIV.

United States District Court, S.D. Florida, Miami Division.

May 10, 2010.

Arturo C. Martinez, Esq., Shutts & Bowen LLP, Miami, FL, for Plaintiff.

Marc R. Ginsberg, Esq., Miami Lakes, FL, for Defendant.

### AMENDED ORDER ON MOTIONS FOR SUMMARY JUDGMENT[1]

ADALBERTO JORDAN, District Judge.

On Saturday night, December 16, 2006, Miguel Baena and his fraternal twin, Edgar, went to a Miami Heat basketball game at the American Airlines Arena in downtown Miami. Little did they know, when they headed to the game, that an evening of fun would turn into a night of tragedy. At around 6:30 a.m. the following morning, Edgar—driving a car Miguel had rented from Enterprise—was involved in an accident that left Paola Penafiel dead.

These two consolidated cases concern a dispute about whether there is insurance coverage for Ms. Penafiel's death. In one case, Geico General Insurance Company seeks a declaratory judgment that there is no coverage under the policy that it had issued to Edgar. In the other case, Esperanza Garcia, the representative of Ms. Penafiel's estate, sues Geico for bad faith to recover a $5 million consent judgment entered against Edgar.

All parties have filed motions for summary judgment. For the reasons set forth below, the motions for summary judgment [D.E. 91, D.E. 92 in Case No. 07–23358, & D.E. 68, D.E. 69 in Case No. 07–23044] are DENIED.

### I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See id.* at 323, 106 S.Ct. 2548. That is, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (*quoting First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). In making this assessment, the court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party,"

1. This order supersedes the prior summary judgment order reported at 587 F.Supp.2d 1250 (S.D.Fla.2008).

and "resolve all reasonable doubts about the facts in favor of the nonmovant." *See Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997).

## II. FACTS

On December 14, 2006, Miguel, who lived in New Jersey, flew to South Florida for vacation. At the Fort Lauderdale Airport, he rented a Mercedes–Benz sedan from Enterprise. When asked by an Enterprise representative if there would be any other drivers, Miguel said no. *See* Dep. of Miguel Baena at 10. The rental agreement therefore stated, "no other drivers permitted," and Miguel initialed the section containing that language. *See* Enterprise Rental Agreement at 1. Miguel purchased a damage waiver from Enterprise for any damage to the car, but did not purchase liability insurance, even though he did not have automobile insurance of his own. *See* Dep. of Rosemary Kelly at 27–28.

Edgar, who lived in South Florida, was not with Miguel when he rented the car, and was not privy to the terms of the rental agreement. *See* Dep. of Miguel Baena at 6; Dep. of Edgar Baena at 19–21. Edgar generally knew, however, that an additional authorized driver had to be listed on the rental agreement if that person was known to the renter. *See* Dep. of Edgar Baena at 16–18.[2]

On Saturday, December 16, 2006, the Baena brothers went to a Miami Heat basketball game. Miguel drove, in the Enterprise vehicle he had rented. After the game, Miguel and Edgar visited Bayside marketplace (located next to the American Airlines Arena), and then headed to South Beach, where they had dinner. From there, they drove to a club in downtown Miami and stayed there until the wee hours of the next morning. In total, Miguel had a couple of alcoholic drinks that night, while Edgar had one. *See* Dep. of Miguel Baena at 13–14; Dep. of Edgar Baena at 21–22, 24–25. On Sunday morning, at around 6:30 a.m. on State Road 112 in Miami, with Edgar at the wheel, the Mercedes–Benz crashed into the car driven by Ms. Penafiel. She was pronounced dead at the scene.

According to Edgar, Miguel asked him to drive home because he was tired. *See* Dep. of Edgar Baena at 25–26. Edgar believed he had Miguel's permission to drive the car, but did not think he had anyone else's permission to do so. *See id.* at 25.

Miguel has given different accounts of what happened during the early morning hours of December 17, 2006, so there is conflicting evidence regarding the circumstances that put Edgar behind the wheel. At his deposition, Miguel testified that he asked Edgar to drive home. Miguel felt tired, thought he had drunk too much to take a chance on driving, and wanted to sleep in the backseat on the way home. Miguel also testified that, when he asked Edgar to drive, he did not think about the prohibition against other drivers in the rental agreement. *See* Dep. of Miguel

---

2. Rosemary Kelly, Enterprise's corporate representative, testified that if an unauthorized driver of a rental car was involved in an accident, the company would consider such operation of the vehicle to be a violation of the rental agreement, even if the renter had become ill or unfit to drive. The violation, in Enterprise's view, would void any damage waiver that the renter had purchased, and allow Enterprise to pursue the renter for damage to the vehicle. *See* Dep. of Rosemary Kelly at 16–18, 22, 27. Although Enterprise asserted as an affirmative defense in Geico's declaratory judgment action that Edgar was a permissive user under Florida law, Ms. Kelly testified that she was not aware of Florida law on the issue and did not have knowledge of any facts to support the defense. *See id.* at 32.

Baena at 13–15. Edgar corroborated Miguel's version of events. *See* Dep. of Edgar Baena at 25–26. But in an interview with an Enterprise representative after the accident, Miguel said that had "no clue" as to why Edgar was driving the car. *See* Dep. of Patricia Schillaci at 19–20.[3] If that earlier statement is credited, it is possible that Miguel did not give Edgar permission to drive the car, and that Edgar took it upon himself to drive home.

Edgar's automobile insurance policy with Geico provides coverage against "damages which an insured becomes legally obligated to pay because of … bodily injury sustained by a person … [a]rising out of the ownership, maintenance, or use of the owned auto or a non-owned auto." The policy goes on to state that, with respect to a "non-owned auto" (e.g., the Mercedes–Benz that Miguel rented from Enterprise), "[s]uch use must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope that permission."

After the accident, Geico denied coverage under Edgar's policy. Ms. Garcia, as representative of Ms. Penafiel's estate, reached a *Coblentz* agreement with Edgar, in which he agreed to the entry of a consent judgment in the amount of $5 million, in resolution of the estate's wrongful death action against him. *See* Complaint at ¶¶ 5–10, 28, & Exh. F; *Coblentz v. Am. Sur. Co. of N.Y.*, 416 F.2d 1059, 1062–63 (5th Cir.1969). As noted earlier, Ms. Garcia is proceeding against Geico on a theory of bad faith under Florida law to recover the $5 million judgment, while Geico seeks a declaratory judgment that there is no coverage for the accident under Edgar's policy.

## III. Analysis

The parties have stipulated that denied coverage to Edgar because it concluded that his use of the rental car did not fall within the policy's "non-owned auto" provision. For purposes of these summary judgment motions, it is undisputed that Edgar believed that his use of the rental car was with Miguel's permission, and that Edgar did not have Enterprise's permission to drive the car. *See* Dep. of Edgar Baena at 25; Enterprise's Response to Request for Admissions at ¶ 4. Thus, the critical issues at the summary judgment stage are whether Miguel gave Edgar permission to drive the car, and whether Edgar reasonably believed that he had Enterprise's permission to drive the car.

Although there is unanimity between the parties that the undisputed evidence forecloses any triable question of fact, the sides are decidedly at odds as to whom the benefit of summary judgment should inure. Geico argues that, because Edgar did not know who owned the car, *see* Dep. of Edgar Baena at 20, he could not have reasonably believed he had Enterprise's permission to drive it. Edgar and Ms. Garcia contend that Edgar reasonably believed he had Enterprise's permission because Miguel (who was in lawful possession of the vehicle) gave him permission to drive and because Edgar was unaware of the rental agreement's "additional driver" prohibition.

The nuances of this case apparently present a novel issue in Florida. Until recently, Enterprise and/or its insurer would have been strictly and vicariously liable for the accident under Florida's "dangerous instrumentality" doctrine. *See, e.g., Aurbach v. Gallina*, 753 So.2d 60, 63 (Fla.2000) ("[W]hen owners authorize

---

**3.** At his deposition, Miguel said he did not remember speaking to an Enterprise representative about the accident. *See* Dep. of Miguel Baena at 15.

other individuals to use their vehicles, they are liable for the damages that the other authorized drivers negligently cause to third parties."); *Susco Car Rental System v. Leonard,* 112 So.2d 832, 835–36 (Fla. 1959) (extending primary liability under this doctrine to car rental companies); Fla. Stat. § 324.021(9)(b)(2) (imposing vicarious liability on car rental companies, up to certain amounts, for the negligence of their lessees). In 2005, however, the United States Congress pre-empted the application of vicarious/dangerous-instrumentality liability to rental-car companies with the passage of the so-called Graves Amendment:

> An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—
>
> . . .
>
> the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles....

49 U.S.C. § 30106(a). Given the Graves Amendment, Ms. Garcia cannot sue Enterprise or its insurer for Ms. Penafiel's death. *See Garcia v. Vanguard Car Rental USA, Inc.,* 540 F.3d 1242, 1253 (11th Cir.2008) (upholding the constitutionality of the Graves Amendment and noting that it abrogates dangerous-instrumentality liability for rental-car companies); *West v. Enterprise Leasing Co.,* 997 So.2d 1196, 1197–98 (Fla. 2d DCA 2008) (concluding

that Congress properly enacted the Graves Amendment under its Commerce Clause powers). And because Miguel was uninsured, the only insurance that could possibly provide coverage is Edgar's policy with Geico.

## A. CONSTRUING THE RELEVANT LANGUAGE IN EDGAR'S GEICO POLICY

■ The "non-owned auto" coverage of Edgar's policy language is generally meant to "cover [an] insured while engaged in the infrequently and casual use of an automobile other than the one described in the policy." *Henigson v. Davis,* 305 So.2d 86, 88 (Fla. 4th DCA 1974). As far as I can tell, there are no Florida cases definitively interpreting the relevant "reasonably believed" language in the "non-owned auto" coverage of Edgar's policy.[4] But a number of courts in other jurisdictions have interpreted identical or similar "reasonably believed" or "reasonable belief" language in automobile policies, both as to coverage provisions and as to exclusionary clauses. These courts have generally concluded that, for coverage to exist (or for coverage not to be excluded), two things must be shown. First, the driver must have had a subjective belief that he had the owner's permission to drive the car. Second, that subjective belief must have been objectively reasonable. *See, e.g., Cooper v. State Farm Mutual Auto. Ins. Co.,* 849 F.2d 496, 497 & n. 2 (11th Cir.1988) (exclusionary clause under North Carolina law); *Athridge v. Aetna Casualty & Surety Co.,* 351 F.3d 1166, 1172 (D.C.Cir.2003) (exclusionary clause under District of Columbia law); *Armstrong v. Thrifty Car Rental,* 933 So.2d 235, 240 (La.App. 3d Cir.2006) (coverage provision under Louisiana law); *Hu-*

---

4. There are some Florida cases involving "non-owned auto" coverage, but the policies in those cases either did not contain the "reasonably believed" language found in Edgar's policy, *see, e.g., Walters v. Nationwide Mut.*

*Ins. Co.,* 161 So.2d 225, 226 (Fla. 1st DCA 1964), or limited the language to relatives of the insured, *see, e.g., Govt. Employees Ins. Co. v. Donald,* 271 So.2d 189, 190 (Fla. 1st DCA 1972).

genberg v. West American Ins. Co., 249 S.W.3d 174, 190–92 (Ky.App.2006) (exclusionary clause under Kentucky law); *Hurst v. Grange Mutual Cas. Co.*, 266 Ga. 712, 713, 470 S.E.2d 659 (1996) (exclusionary clause under Georgia law); *Empire Indem. Ins. Co. v. Allstate County Mut. Ins. Co.*, 617 F.Supp.2d 456, 464–66 (N.D.Tex.2008) (exclusionary clause under Texas law), *aff'd*, 319 Fed.Appx. 336 (5th Cir.2009); *Metro. Prop. & Cas. Ins. Co. v. Espach*, 313 F.Supp.2d 109, 112–14 (D.Conn.2004) (coverage provision under Connecticut law). I find these cases persuasive, and believe that the Florida Supreme Court would similarly interpret the language in Edgar's policy. *Cf. Habie v. Krischer*, 642 So.2d 138, 140 (Fla. 4th DCA 1994) (noting that "reasonable belief" is an "objective standard").

■ To determine whether a person's subjective belief that he had the owner's permission to drive the car was objectively reasonable, courts usually look at five factors:

> (1) whether the driver had express permission to use the vehicle; (2) whether the driver's use of the vehicle exceeded the permission granted; (3) whether the driver was "legally" entitled to drive under the laws of the applicable state; (4) whether the driver had any ownership or possessory right to the vehicle; and (5) whether there was some form of relationship between the driver and the [owner], or one authorized to act on behalf of the [owner], that would have caused the driver to believe he was entitled to drive the vehicle.

See, e.g., *Gen. Accident Fire & Life Assurance Corp. v. Perry*, 75 Md.App. 503, 541 A.2d 1340, 1350 (Md.Spec.App.1988); *Omaha Prop. & Cas. Ins. Co. v. Peterson*, 865 S.W.2d 789, 791 (Mo.App.1993); *Wooh v. Home Ins. Co.*, 84 Wash.App. 781, 930 P.2d 337, 339–40 (1997); *Athridge v. Aetna Casualty & Surety Co.*, 2006 WL 2844690, \*6 (D.D.C.2006); *Espach*, 313 F.Supp.2d at 114. These factors are also cited with approval in one of the leading insurance treatises. *See* R. Russ & T. Segalla, 8A COUCH ON INSURANCE 3d § 118:33, at 118–57 & n. 13 (2004 & 2009 Supp.).[5]

■ As noted earlier, there is conflicting evidence as to how Edgar came to drive the Mercedes–Benz on the morning of December 17, 2006. That conflicting evidence, together with the prohibition against other drivers in the Enterprise rental agreement, Edgar's awareness that Miguel did not own the car, Edgar's understanding that he only had Miguel's permission, and Edgar's general knowledge of a renter's need to disclose known additional drivers, creates a material issue of fact as to whether Edgar had the express permission of Miguel to drive the car, and whether Edgar reasonably believed that he had the permission of Enterprise—the owner of the car—to drive. *See, e.g., Cooper*, 849 F.2d at 499–500 (reversing grant of summary judgment because there was issue of fact as to whether second permittee reasonably believed he had the permission of the owner (through the permission of first permittee) to drive the car); *Armstrong*, 933 So.2d at 239–40 (reversing

---

**5.** The one Florida decision applying a "reasonable belief" clause in an automobile insurance policy, though it does not contain much discussion or analysis, does not appear to be inconsistent with the cases cited in the text. *See Roberts v. U.S. F. & G. Co.*, 498 So.2d 1037, 1039 (Fla. 1st DCA 1986) (where policy did not provide liability coverage for "using a vehicle without a reasonable belief that that person is entitled to do so," trial court properly held that vehicle repairman did not have a reasonable belief that he could drive customer's car to the beach, even though repairman testified that he had known customer and his family for a number of years and that he did not think customer would mind if he drove the car).

grant of summary judgment to insurer where there was evidence that renter gave permission to insured to drive rental car, and insured, though not listed as an authorized driver on rental agreement, filed affidavit indicating that she believed she had been named as an authorized driver); *Broz v. Winland,* 68 Ohio St.3d 521, 629 N.E.2d 395, 398 (1994) (permission from an authorized user creates a question of fact as to whether the driver had a reasonable belief that she was entitled to use the car); 8A COUCH ON INSURANCE 3d § 118:33, at 118–56 & 118–57 ("Due to the subjective nature of this analysis, determining whether a person reasonably believed to have permission from the owner is a question of fact. . . . [W]hile the absence of the legal entitlement to drive does not automatically preclude the existence of a reasonable belief, it may be weighed as a factor in determining whether the driver has a reasonable belief of permission from the owner.") (citing cases). *Cf. Habie,* 642 So.2d at 140 ("as a general rule, the question of 'reasonable beliefs' is a factual determination which should be left for the jury").

In *Wooh,* for example, Ms. Wooh negligently drove a car owned by her husband's employer, which her husband had been expressly told was to be used only by company employees. The trial court, in a bench trial, found that Ms. Wooh reasonably believed that she could drive the car because her husband regularly drove the vehicle and had expressly told her that she could use the car on the day of the accident. *See Wooh,* 930 P.2d at 338. The appellate court affirmed the trial court's declaratory judgment finding that Ms. Wooh was covered under her insurance policy, based on the five factors dictating the reasonableness of her belief that she could use the non-owned vehicle. *See id.* at 340. Just as *Wooh* posed a question of fact as to reasonable belief, so do the circumstances of this case.

**B.   THE PARTIES' ADDITIONAL ARGUMENTS**

█ Geico argues that, as a matter of law, Edgar did not have a reasonable belief that he had Enterprise's permission to drive the car. I disagree for the reasons stated above, but also add the following.

About 30 years ago, the Third District addressed the issue of permissive use in a case where an employee used a company van outside the scope of consent afforded him by his employer. The issue of consent was critical, for the employer's insurance policy required that the vehicle be operated with the permission of the owner. The Third District held that the "minor deviation" rule would apply to determine the reasonableness of the use: "If the use made by employee is not a gross violation of the terms of the bailment, even though it may have amounted to a deviation, protection is still afforded such employee." *Kobetitsch v. Am. Mfrs. Mut. Ins. Co.,* 390 So.2d 76, 78 (Fla. 3d DCA 1980). The Third District went on to note that, on the record presented, whether the employee's deviation was so consequential as to warrant a denial of coverage posed a question of fact for which summary judgment was inappropriate. *See id.* at 79. *Kobetitsch* is admittedly inapposite because it deals with a situation in which some form of consent is given to the driver by the owner, but it can nonetheless be read to contravene Geico's contention that Edgar's use of the rental vehicle, in violation of the terms of Miguel's rental agreement with Enterprise, voids coverage as a matter of law.

Moreover, in *Susco* the Florida Supreme Court analyzed a situation where a vehicle leased by a car-rental company was operated by a driver with the permission of the lessee, but without the knowledge or consent of the company, and held that the company was vicariously liable for the negligence of the lessee:

When this defendant turns over an automobile to another for a price, he in actuality entrusts that automobile to the renter for all ordinary purposes for which an automobile is rented. The fact that the owner had a private contract or secret agreement with the renter cannot make such restrictions a bar to the rights of the public. The restrictions agreed upon do not change the fact that the automobile was being used with the owner's consent. Nor does it appear that the car was not being used for the purpose for which it was rented i.e., the pleasure, convenience or business of the renter.

*Susco,* 112 So.2d at 834–35. *Susco,* of course, determined only the vicarious liability of the car rental company under the dangerous instrumentality doctrine. Nevertheless, its logic may suggest that the term in the rental agreement between Miguel and Enterprise prohibiting use by any additional drivers, though relevant, is not dispositive of the reasonableness of Edgar's use, particularly given Edgar's lack of actual knowledge about this term. Miguel may have breached his agreement with Enterprise by allowing his brother to drive, but the terms of the agreement—to which Edgar was not privy—cannot render Edgar's use of the car unreasonable as a matter of law on this record. *See, e.g., Armstrong,* 933 So.2d at 239–40; *Broz,* 629 N.E.2d at 398; 8A COUCH ON INSURANCE 3d § 118:33, at 118–57.

Finally, I turn to the argument of Ms. Garcia and Edgar that the Florida Supreme Court's decision in *Roth v. Old Republic Ins. Co.,* 269 So.2d 3 (Fla.1972), entitles them to summary judgment on the issue of coverage. Like this case, *Roth* concerned an accident involving a rental car driven by someone other than the renter. Mr. Plax, who was in Miami on vacation, rented a car from Yellow–Rent–A–Car. Although Mr. Plax obtained liability insurance for the rental car, the agreement provided that no one other than he was allowed to drive the car. Mr. Plax left Miami before the end of the rental period, and turned the car over to Mr. Roth (who was 18) without Yellow's consent. Mr. Roth, while driving the car, struck two elderly pedestrians, killing one and seriously injuring the other. *See id.* at 4. State Farm, Mr. Roth's insurer, advanced funds on its policy for settlement, without prejudice to determination of questions relating to indemnity or restitution. As the case arrived in the Florida Supreme Court, the dispute was among the various insurers (State Farm (Mr. Roth's insurer), Old Republic (Yellow's insurer), and North River (Mr. Plax's insurer)) as to "who is ultimately and primarily liable for the amounts paid to the claimants." *See id.*

The Florida Supreme Court first ruled, given that rental car companies were then subject to vicarious liability under the dangerous instrumentality doctrine, that the "insurer of the owner's automobile [i.e., Old Republic, Yellow's insurer] is ... primarily liable for injuries inflicted because of the negligent operation of the automobile under our holding in *Susco.*" *See id.* at 5. It then held that State Farm was entitled to indemnity or restitution from Yellow or its insurer, Old Republic: "We do not think that Yellow ... and its insurer, Old Republic ..., can escape primary liability for the accident. Its automobile was rented to [Mr.] Plax, who, as lessee or bailee, *paid the item of premium for the insurance coverage afforded by Old Republic ....* We conclude [Mr.] Roth, as [Mr.] Plax's permittee, was ... protected by the Old Republic policy due to legal principles implicit in *Susco*[.]" *Id.* at 5–6 (emphasis added). The reason for this result, the Florida Supreme Court explained, was that "the owner and the lessee's insurance coverage under financial responsibility (in this instance afforded by Old Republic) covers the lessee's permittee as well. The terms of the Old Republic

policy protect [Mr.] Roth because of the Financial Responsibility Law and the policy's conformance therewith, and cannot be varied by the collateral agreement between Yellow and [Mr.] Plax [i.e., the agreement that no one else would drive the car]. It follows that [Mr.] Roth or his insurer, State Farm, does not legally have to pay accident claims either directly or by way of indemnification which Old Republic is primarily and specifically required to pay under the terms of its policy for the protection of [Mr.] Roth." *Id.* at 6.

In my view, *Roth* does not control here for a number of reasons. First, *Roth* never analyzed the terms of the policy issued by State Farm to Mr. Roth—the equivalent of the policy issued by Geico to Edgar here—and there is no indication that the State Farm policy contained language that was similar to the language in Edgar's Geico policy. *Roth* therefore cannot be binding precedent as to the meaning and effect of the "reasonable belief language" in the "non-owned auto" coverage of Edgar's policy with Geico. Second, the actual holding of *Roth* is that, in cases where a renter improperly allows a non-listed driver to operate the rental vehicle, ultimate financial responsibility for an accident is placed on the car rental company and its insurer where the renter purchases liability insurance from the rental car company. Imposing vicarious liability on Enterprise in this case is not possible due to the Graves Amendment, and it does not make sense to apply *Roth* blindly at a time when the governing legal landscape has changed. Third, a critical fact in *Roth* was that the renter purchased liability insurance from the rental car company. *See Truck Discount Corp. v. Serrano*, 362 So.2d 340, 343 (Fla. 1st DCA 1978) (explaining that *Roth* "should be limited to its facts," and reading *Roth* as holding "that since the lessee had paid for the insurance, the lessee's protection for which the lessee had paid a premium necessarily inured to the permit-

ted and that any contractual provision precluding coverage to anyone other than the lessee without the express consent of the owner was contrary to public policy"). Here Miguel did not buy any liability coverage from Enterprise when he rented the car, and *Roth* is therefore distinguishable on its facts. Fourth, I do not read *Roth* as holding that anytime a renter of a car gives permission to a third party to drive, there is automatically permission from the rental car company regardless of the circumstances. Fifth, if Ms. Garcia and Edgar are suggesting that I read *Roth* to require rewriting the terms of Geico's policy (or nullifying those terms as contrary to public policy) so that there will be coverage for Ms. Penafiel's death as a matter of law on this record, I decline the invitation. Liability on an automobile insurance policy is a matter of contract law, and a judge is not free to rewrite a policy to achieve what he might believe is the greater social good. *See, e.g., Taurus Holdings, Inc. v. U.S. F. & G. Co.*, 913 So.2d 528, 532 (Fla.2005) ("courts may not 'rewrite [insurance] contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties' ") (citations omitted).

## IV. Conclusion

Geico's policy provides coverage to Edgar when driving a "non-owned auto" as long as he had the permission of, or reasonably believed he had the permission of, that car's owner. On this record, there are material issues of fact as to whether Miguel gave Edgar permission to drive the Enterprise rental car, and as to whether Edgar reasonably believed that he had Enterprise's permission to drive the car. The parties' motions for summary judgment are therefore denied.